# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| **NICOLE KEITH AND RYAN KEITH, JACK R. DODDS, JR., CRYSTALINA R. DODDS, MICHELLE COOPER, AND SHANNON MINERICH on behalf of themselves and all others similarly situated,** | ) ) ) ) ) ) | **Case No. 1:15-cv-10381** <br><br> **Hon. Amy St. Eve** <br><br> **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **FERRING PHARMACEUTICALS INC.,** | ) ) | |
| **Defendant.** | ) | |

## FERRING PHARMACEUTICALS INC.'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD........................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.      PLAINTIFFS' ALLEGATIONS DO NOT SATISFY RULES 8 AND 9........................ 7

      A.      Plaintiffs Do Not Plausibly Allege That <u>All</u> Recalled Bravelle Was OOS
            (All Counts). ....................................................................................................... 7

      B.      Plaintiffs Do Not Allege That <u>Their</u> Bravelle Was OOS (All Counts).................. 9

      C.      Plaintiffs Dodds, Minerich, and Keith Allege That Bravelle Worked as
            Promised (Counts I-V, VII, VIII). ...................................................................... 10

      D.      Plaintiffs Fail to Plead Plausibly, or with Particularity, any Deceptive
            Conduct (Counts IV-VII). ................................................................................... 12

      E.      Plaintiffs Do Not Plausibly Allege Reliance or Causation Related to Any
            Alleged Misrepresentation by Ferring (Counts I, II, IV-VIII)............................. 14

      F.      Plaintiffs Do Not Plead Details of Their Purchase With Particularity
            (Counts III-VII)................................................................................................... 15

II.     PLAINTIFFS' BREACH OF WARRANTY CLAIMS SHOULD BE
       DISMISSED FOR FAILURE TO PLEAD PRE-SUIT NOTICE AND PRIVITY
       (COUNTS II AND III).................................................................................................. 16

      A.      Plaintiffs Fail to Plead Privity as Required under Illinois and Michigan
            Law. .................................................................................................................... 16

      B.      Plaintiffs Did Not Allege Pre-Suit Notice. ........................................................ 17

III.    PLAINTIFFS' MMWA CLAIM SHOULD BE DISMISSED FOR FAILURE TO
      ALLEGE AN ACTIONABLE WARRANTY (COUNT VIII). ...................................... 18

IV.    PLAINTIFFS' MCPA AND ICFA CLAIMS FAIL AS A MATTER OF LAW
      (COUNT IV, VI)........................................................................................................... 20

V.     PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT III). ..................... 22

CONCLUSION................................................................................................................... 24

## **TABLE OF AUTHORITIES**

**CASE**                                                 **PAGE(S)**

*A.D. Transport, Inc. v. Michigan Materials & Aggregates Co.*,
  No. 290236, 2010 WL 3819958 (Mich. Ct. App. Sept. 30, 2010)...........................................22

*Ackermann v. Wyeth Pharms.*,
  471 F. Supp. 2d 739 (E.D. Tex. 2006) .................................................................................15

*Alexander v. Del Monte Corp.*,
  No. 09-12303, 2011 WL 87286 (E.D. Mich. Jan. 11, 2011) ..................................................21

*Anthony v. Country Life Mfg., LLC*,
  70 Fed. App'x 379 (7th Cir. 2003) ......................................................................................11

*Argyle Indep. Sch. Dist. v. Wolf*,
  234 S.W.3d 229 (Tex. App 2007).........................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................6, 7, 9

*Baldwin v. Star Sci., Inc.*,
  78 F. Supp. 3d 724, 742 (N.D. Ill. 2015) ....................................................................... *passim*

*Bates v. Gen. Nutrition Ctrs., Inc.*,
  897 F. Supp. 2d 1000 (C.D. Cal. 2012) ...............................................................................19

*Bd. of Educ. of City of Chicago v. A, C & S, Inc.*,
  131 Ill. 2d 428 (1989) .......................................................................................................18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................6, 7

*Berry v. Indianapolis Life Ins. Co.*,
  608 F. Supp. 2d 785 (N.D. Tex. 2009) ................................................................................13

*Best v. Mach. Works*,
  179 Ill.2d 367 (1997) ........................................................................................................22

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) .........................................................................................21, 22

*Caterpillar, Inc. v. Usinor Industeel*,
  393 F. Supp. 2d 659 (N.D. Ill. 2005) ..............................................................................16, 17

*Cheval Int'l v. Smartpak Equine LLC*,
  No. 14-5010, 2016 WL 1064496 (D.S.D. Mar. 15, 2016).......................................................15

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*,
    24 F. Supp. 3d 750, 762-63 (N.D. Ill. 2014)........................................................13

*Chicago Title Ins. Co. v. Teachers' Retirement Sys. of IL*,
    7 N.E.3d 19 (Ill. 1st Dist. 2014)........................................................................23

*Ciszewski v. Denny's Corp.*,
    No. 09 C 5355, 2010 WL 2220584 (N.D. Ill. June 2, 2010) .................................13

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) ..................................................................11, 14, 23

*Cohen v. Am. Sec. Ins. Co.*,
    735 F.3d 601 (7th Cir. 2013) ..........................................................................22, 23

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482 (1996) ........................................................................................17

*Darne v. Ford Motor Co.*,
    No. 13 C 03594, 2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ...................6, 13, 14

*De Bouse v. Bayer*,
    235 Ill.2d 544 (2009) .....................................................................11, 12, 15

*Deschepper v. Midwest Wine & Spirits, Inc.*,
    84 F. Supp. 3d 767, 783 (N.D. Ill. 2015) ..............................................................8

*Duronio v. Merck & Co.*,
    No. 267003, 2006 WL 1628516 (Mich. App. Ct. June 13, 2006) (unpublished) ...................20

*Fortune Prod. Co. v. Conoco, Inc.*,
    52 S.W.3d 671 (Tex. 2000)................................................................................22

*Gen. Motors Corp. v. Brewer*,
    966 S.W.2d 56 (Tex. 1998)................................................................................11

*Goldsmith v. Mentor Corp.*,
    913 F. Supp. 56 (D.N.H. 1995)..........................................................................19

*Hancock v. Chicago Title Ins. Co.*,
    635 F. Supp. 2d 539 (N.D. Tex. 2009) .............................................................23

*Hasek v. DaimlerChrysler Corp.*,
    319 Ill. App. 3d 780 (2001) ..............................................................................11

*Hepper v. Triple U Enters., Inc.*,
    388 N.W.2d 525 (S.D. 1986) ............................................................................17

*Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*,
  774 N.W.2d 332 (Mich. Ct. App. 2009) ...........................................................23

*Hofeldt v. Mehling*,
  658 N.W.2d 783 (S.D. 2003) .............................................................................11

*Home Owners Ins. Co. v. ADT LLC*,
  109 F. Supp. 3d 1000, 1008 (E.D. Mich. 2015).............................................6, 13

*Howton v. Winnebago, Inc.*,
  No. 04 C 8349, 2005 WL 1500926 (N.D. Ill. June 13, 2005) ...............................20

*In re Aqua Dots Prods. Liab. Litig.*,
  270 F.R.D. 377 (N.D. Ill. 2010)........................................................................22

*In re OnStar Contract Litig.*,
  278 F.R.D. 352 (E.D. Mich. 2011) ...................................................................15

*Jasper v. MusclePharm Corp.*,
  No. 14-CV-02881-CMA-MJW, 2015 WL 2375945 (D. Colo. May 15, 2015).......19

*Jensen v. Bayer AG*,
  371 Ill. App. 3d 682 (2007) ...................................................................8, 13, 17

*Johnson v. Ford Motor Co.*,
  No. 01 C 8882, 2004 WL 407022 (N.D. Ill. Jan. 30, 2004) ...............................16

*Johnson v. Larson*,
  779 N.W.2d 412 (S.D. 2010) .......................................................................22, 23

*Kanter v. Warner-Lambert Co.*,
  122 Cal. Rptr. 2d 72 (Cal. App. Ct. 2002) .......................................................19

*Kemp v. Pfizer, Inc.*,
  835 F. Supp. 1015 (E.D. Mich. 1993)................................................................19

*Knudson v. Grand Council of Nw Legion of Honor*,
  63 N.W. 911 (S.D. 1895) .................................................................................23

*Kyles v. Keefe Commissary Network, LLC*,
  14-cv-11907, 2015 WL 1637466 (E.D. Mich. Apr. 13, 2015) ...............................21

*Lantz v. Am. Honda Motor Co.*,
  No. 06 C 5932, 2007 WL 1424614 (N.D. Ill. May 14, 2007) ...............................17

*Larry J. Soldinger Assoc., Ltd. v. Aston Martin Lagonda of N. Am., Inc.*,
  No. 97 C 7792, 1999 WL 756174 (N.D. Ill. Sept. 13, 1999).................................16

*Lipov v. Louisiana-Pacific Corp.*,
  No. 12-cv-439, 2013 WL 3805673 (W.D. Mich. July 22, 2013)......................................12, 13

*Massa v. Genentech Inc.*,
  No. H-11-70, 2012 WL 956192 (S.D. Tex. Mar. 19, 2012) ....................................................11

*Mathison v. Bumbo*,
  No. SA CV08-0369, 2008 WL 8797937 (C.D. Cal. Aug. 18, 2008)........................................11

*Med. City Dallas, Ltd. v. Carlisle Corp.*,
  251 S.W.3d 55 (Tex. 2008).....................................................................................................23

*Montgomery v. Kraft Foods Glob., Inc.*,
  No. 1:12-CV-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012)...............................16, 17

*Newman v. McNeil Consumer Healthcare*,
  No. 10 C 1541, 2013 WL 7217197 (N.D. Ill. Mar. 29, 2013) ................................................21

*Nygaard v. Sioux Valley Hosps. & Health Sys.*,
  731 N.W.2d 184 (S.D. 2007) ............................................................................................11, 13

*O'Neil v. Simplicity, Inc.*,
  553 F. Supp. 2d 1110 (D. Minn. 2008)..................................................................................7, 9

*Pack v. Damon Corp.*,
  434 F.3d 810 (6th Cir. 2006) ...................................................................................................16

*Patel v. Holiday Hospitality Franchising, Inc.*,
  172 F. Supp. 2d 821 (N.D. Tex. 2001) ......................................................................................6

*Peter v. Stryker Orthopaedics, Inc.*,
  581 F. Supp. 2d 813 (E.D. Mich. 2008)...................................................................................21

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ..............................................................................................6, 8

*Price v. Philip Morris*,
  219 Ill. 2d 182 (2005) ........................................................................................................21, 22

*Pugh v. Tribune*,
  521 F. 3d 686 (7th Cir. 2008) ...................................................................................................3

*Ritacca v. Storz Med., A.G.*,
  291 F.R.D. 176 (N.D. Ill. 2013)...............................................................................................13

*Robinson v. Match.com L.L.C.*,
  No. 10-cv-2651, et al., 2012 WL 5007777 (N.D. Tex. Oct. 17, 2012),.............................12, 14

*Rosipko v. FCA US, LLC*,
　No. 15-11030, 2015 WL 8007649 (E.D. Mich. Dec. 7, 2015) ...............................................20

*Santana v. Cook Cty. Bd. of Review*,
　679 F.3d 614 (7th Cir. 2012) .................................................................................................3

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*,
　No. 05 C 3004, 2006 WL 952032 (N.D. Ill. April 12, 2006) ................................................15

*Short v. Janssen Pharms. Inc.*,
　No. 1:14-cv-1025, 2015 WL 2201713 (W.D. Mich. May 11, 2015).....................................20

*Skelton v. Gen. Motors Corp.*,
　660 F.2d 311 (7th Cir. 1981) ................................................................................................18

*Smith v. Globe Life. Ins. Co.*,
　597 N.W.2d 28 (Mich. 1999)................................................................................................20

*Spector v. Mondelez Int'l Inc.*,
　No. 15 C 4298, 2016 WL 1270493 (N.D. Ill. Mar. 31, 2016) ...........................................6, 10

*Virchow v. University Homes, Inc.*,
　699 N.W.2d 499 (S.D. 2005) ...............................................................................................11

*Whitwell v. Wal-Mart Stores, Inc.*,
　No. CIV 09-513-GPM, 2009 WL 4894575 (S.D. Ill. Dec. 11, 2009) ...................................18

*Wyeth v. Levine*,
　555 U.S. 555 (2009)..............................................................................................................18

*Yeftich v. Navistar, Inc.*,
　722 F.3d 911 (7th Cir. 2013) .................................................................................................6

*Young v. Wells Fargo & Co.*,
　671 F. Supp. 2d 1006 (S.D. Iowa 2009) .........................................................................6, 12, 13

*Yumilicious Franchise, LLC v. Barrie*,
　No. 13-cv-4841, 2015 WL 1822877 (N.D. Tex. Apr. 22, 2015) ...........................................14

**Federal Statutes**

15 U.S.C. § 2301 .......................................................................................................................18, 19

15 U.S.C. § 2310 ..........................................................................................................................18

15 U.S.C. § 2311 ..........................................................................................................................18

15 U.S.C. §§ 2301-2312 ...............................................................................................................19

**State Statutes**

810 ILCS 5/2-607 ..................................................................................................................17

815 ILCS 505/10b ..........................................................................................................21, 22

M.C.L. § 440.2607 ......................................................................................................17, 18

M.C.L. § 445.903 ................................................................................................................12

M.C.L. § 445.904 ................................................................................................................20

S.D.C.L. § 57A-2-607 ................................................................................................17, 18

Tex. Bus. & Com. Code § 17.46 ........................................................................13, 15

Tex. Bus. & Com. Code § 17.50 ................................................................................11

Tex. Bus. & Com. Code § 2.607 ..........................................................................17, 18

U.C.C. § 2-313 ....................................................................................................................15

**Rules**

Federal Rules of Civil Procedure Rule 8 ...................................................... *passim*

Federal Rules of Civil Procedure Rule 9(b) ................................................ *passim*

Federal Rules of Civil Procedure Rule 12(b)(6) .................................1, 6, 24

This case arises out of Ferring Pharmaceuticals Inc.'s ("Ferring's") voluntary recall of its prescription fertility drug, Bravelle®, after routine quality monitoring indicated that *certain* (but not all) lots of Bravelle did not meet potency specifications throughout their entire shelf life and were therefore "out of specification" ("OOS") at the time of testing. Ferring immediately instituted a voluntary reimbursement program for consumers who purchased Bravelle in the U.S. between March 27, 2014 and October 15, 2015 (the "Reimbursement Program"). Plaintiffs Nicole and Ryan Keith did not participate in the Reimbursement Program, and instead filed a complaint ("Complaint" or "Compl.") [D.E. 1] without any plausible allegations that their egg donor, Ms. Dorris, actually received OOS Bravelle, or that if she had, that it was the reason Mrs. Keith did not become pregnant.

On March 9, 2016, Plaintiffs filed the First Amended Complaint [D.E. 24] ("FAC"), adding four plaintiffs and alleging that all recalled Bravelle was subpotent or "had the potential to be subpotent." FAC ¶¶ 12, 30. The FAC is based only on "information and belief" and a "suggested inference," both of which contradict Plaintiffs' own allegations and the public record. The FAC should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).

*First,* the entire FAC fails to satisfy Rules 8 and 9(b) in that it does not plead with plausibility or particularity: (a) that all recalled lots of Bravelle were OOS; (b) that the Plaintiffs actually purchased and used Bravelle that was OOS at the time of use; (c) that OOS Bravelle injured Plaintiffs (the Bravelle purchased by Plaintiffs Dodds, Minerich, and Keith appears to have worked as promised); (d) any deceptive conduct by Ferring; (e) reliance on any alleged misrepresentations made by Ferring, or that such misrepresentations caused Plaintiffs' alleged injuries; or (f) the details of Plaintiffs' purchases of Bravelle.

*Second*, and alternatively, certain of Plaintiffs' state law breach of warranty claims should be dismissed for failure to allege the requisite privity and pre-suit notice.

*Third*, Plaintiffs' Magnuson Moss Warranty Act ("MMWA") claim fails for additional reasons: (i) Plaintiffs do not assert the existence of a written warranty that would trigger the MMWA; (ii) the MMWA does not apply to claims relating to labeling and packaging of prescription drugs; and (iii) to the extent the MMWA claim is predicated on Plaintiffs' state law breach of warranty claims, Plaintiffs failed to satisfy the requirements of state law.

*Fourth*, Plaintiff Cooper's Michigan Consumer Protection Act ("MCPA") claim fails for the additional reason that the MCPA does not apply to conduct regulated and approved by the FDA, and Plaintiff Keiths' Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim fails for the similar reason that the ICFA does not apply to transactions specifically approved by the FDA.

*Fifth*, Plaintiffs' claim for unjust enrichment fails for the additional reasons that Plaintiffs allege the existence of an express agreement that governs this transaction, and that unjust enrichment is not an independent cause of action in certain states.

## BACKGROUND

*Bravelle.* Bravelle (urofollitropin for injection, purified) is a fertility medicine that contains follicle stimulating hormone ("FSH") and is indicated *only* "to induce ovulation" or assist in "the development of multiple follicles" in women who are already able to produce and release eggs. FAC, Ex. 1; Bravelle Prescribing Information, *available at* http://www.accessdata.fda.gov/ drugsatfda_docs/label/2014/021289s019lbl.pdf, at 3 (last visited Apr. 21, 2016) ("Prescribing Information").[1] Bravelle is not indicated to improve or otherwise

---

[1] Courts may consider matters outside the pleadings where parties present records "to which the Complaint ha[s] referred" and that are "concededly authentic" and "central" to the claims presented, such

impact egg quality. *Id.* at 3. Physicians typically prescribe Bravelle as part of *in vitro*
fertilization ("IVF") or ovulation induction ("IUI") treatment. *Id.*; FAC ¶ 1.[2]

       ***Voluntary Recall of Bravelle and Reimbursement Program.*** In the Summer/Fall of
2015, routine stability testing indicated that *certain* batches of Bravelle did not meet potency
specifications throughout the entire shelf life and were OOS at the time of testing. *Id.* ¶ 28; *see
also* Reimbursement Letter (FAC, Ex. 1). Although the OOS issue was identified only with
respect to certain batches, and only for batches tested more than twelve months into their shelf
life, all Bravelle was voluntarily recalled from retailers out of an abundance of caution. The
FDA was notified. The FDA assigned the recall # D-0015-2016 and classified it as Class III,
meaning that exposure to recalled Bravelle was not likely to cause adverse health consequences,
and that the recall was to be conducted at the retail level only (*i.e.*, not at the patient level). *See*
FDA Enforcement Report – Week of Oct. 21, 2015, *available at* http://www.accessdata.fda.gov/
scripts/enforcement/enforce_rpt-Product-Tabs.cfm?action=select&recall_number=D-0015-
2016&w=10212015&lang=eng (last visited Apr. 21, 2016).[3]

       Although not required, Ferring established the Reimbursement Program, which
reimburses out-of-pocket Bravelle costs for anyone who bought *any* Bravelle in the U.S. (not
limited to OOS Bravelle) between March 27, 2014 and October 15, 2015, regardless of the facts
underlying the purchaser's experience. For instance, someone who bought Bravelle entirely
within specification during that time period is still eligible for reimbursement. Someone who

---

as the prescribing information for Bravelle. *See, e.g., Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614,
619 (7th Cir. 2012) (internal quotations omitted); FAC ¶ 48 (referencing prescribing information).

[2] IVF refers to "in vitro fertilization," a procedure in which eggs are extracted from a woman, artificially
inseminated, and reimplanted in the woman. IUI refers to intrauterine insemination, a procedure in which
eggs are not extracted or reimplanted; rather, sperm are inserted directly into a woman's uterus.

[3] *Pugh v. Tribune*, 521 F. 3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in
the public record . . . without converting a motion to dismiss into a motion for summary judgment").

bought Bravelle that was OOS when tested at 12 months but was within specification at the earlier time of use is still eligible for reimbursement. Someone who bought and used OOS Bravelle is eligible for reimbursement even if the physician increased the dose to a level that was appropriate for that person. Each Plaintiff received a letter informing them of the Reimbursement Program. FAC ¶ 32, Ex. 1.

*Plaintiffs' Purchase and Use of Bravelle.* None of the Plaintiffs (other than Ms. Cooper) allege the lot number of the Bravelle used. None of the Plaintiffs allege that they attempted to determine the lot number, that they investigated whether the Bravelle they used was OOS at any time (much less at the time of use), or where they purchased their Bravelle.

**The Keiths** allege that they "paid thousands of dollars out-of-pocket to purchase Bravelle," and that it was used by Nicole Keith's sister-in-law, Christina Dorris (her egg donor), as part of IVF. *Id.* ¶ 7. It is unclear from the FAC whether the Keiths purchased the Bravelle, or where it was purchased.[4] *Id.* Bravelle led Ms. Dorris to produce "a number of eggs." Compl. ¶ 18 [D.E. 1]. "Embryos [were] retrieved from Ms. Dorris at the end of [an IVF] cycle and were then implanted into Mrs. Keith," but Mrs. Keith did not get pregnant. FAC ¶ 7. The Keiths previously alleged that their doctor "attributed [Mrs. Keith's] failure to conceive to the poor *quality* of the eggs," not the *number* of eggs Ms. Dorris had produced. Compl. ¶ 19, [D.E. 1]. Bravelle is not indicated to impact the quality of eggs. Prescribing Information, *supra* 2.

**The Dodds** allegedly spent "approximately $3,342 on their purchases of Bravelle," which was "used for a total of two cycles of ovarian stimulation and egg retrieval." FAC ¶ 8. After this treatment, "three unusable eggs were able to be retrieved from Mrs. Dodds' ovaries,"

---

[4] Ferring identified this flaw in Plaintiffs' original Complaint, but Plaintiffs provided no greater clarity in the FAC. *See* Def. Mem. in Support of Motion to Dismiss [D.E 13] at 3.

and "[u]ltimately, the fertility treatments were not successful and Mrs. Dodds did not become pregnant." *Id.*

      **Ms. Cooper** alleges that she "spent approximately $3,000 for Bravelle to use as part of her treatment leading up to Intrauterine Insemination ('IUI')," and that the Bravelle she purchased was part of "a lot that Defendant's own internal testing confirmed to be sub-potent." *Id.* ¶ 9. Ms. Cooper does not allege whether or not she produced eggs, whether her treatment was completed, or whether it was successful.

      **Mrs. Minerich** alleges that she "paid approximately $870 out-of-pocket" for Bravelle "in connection with undergoing an IVF cycle" while she was a resident of South Dakota. *Id.* ¶ 10. After the cycle, she "was able to retrieve" "two usable eggs," but she "did not become pregnant." *Id.*

      Based on these allegations, Plaintiffs assert eight claims: (I) Breach of Express Warranty; (II) Breach of Implied Warranty; (III) Unjust Enrichment; (IV) Violation of the ICFA; (V) Violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"); (VI) Violation of the MCPA; (VII) Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Act ("SDCL"); and (VIII) Violation of the MMWA. Plaintiffs seek to represent a nationwide class of Bravelle purchase, a multi-state class of Bravelle purchasers, and/or in the alternative, Michigan, Illinois, Texas, and South Dakota single-state classes of Bravelle purchasers. *Id.* ¶¶ 35-41. Plaintiffs allege that they have suffered damages, "including, but not limited to, the amounts spent to purchase Bravelle for use in fertility treatment as well as the additional amounts paid to medical providers for fertility treatments utilizing Bravelle," *id.* ¶ 51, as well as other "financial losses," *id.* ¶ 77.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should "accept[] as true all well-pleaded facts and draw[] reasonable inferences in the plaintiffs' favor . . . [it] need not accept as true statements of law or unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (citing Fed. R. Civ. P. 12(b)(6)).

Allegations of fraud such as those underlying Plaintiffs' consumer fraud and unjust enrichment claims must be pled with particularity pursuant to Rule 9(b). *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("the dictates of Rule 9(b) apply to allegations of fraud, not [just] claims of fraud"); *Spector v. Mondelez Int'l Inc.*, No. 15 C 4298, 2016 WL 1270493, at *3 (N.D. Ill. Mar. 31, 2016) ("[a] complaint alleging a violation of consumer fraud must be pled with . . . particularity and specificity"); *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 742 (N.D. Ill. 2015) ("particularity requirements of Rule 9(b)" apply to unjust enrichment claims sounding in fraud).[5] Under Rule 9(b), "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *10 (N.D. Ill. Dec. 18, 2015) (quoting *Pirelli*, 631 F.3d at 441-42).

---

[5] *See also, e.g., Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1008 (E.D. Mich. 2015) (applying 9(b) to MCPA claim); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) (DTPA claims are subject to Rule 9(b)); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1037 (S.D. Iowa 2009) (SDCL claims are subject to Rule 9(b)).

**ARGUMENT**

I. **PLAINTIFFS' ALLEGATIONS DO NOT SATISFY RULES 8 AND 9.**

    A. **Plaintiffs Do Not Plausibly Allege That <u>All</u> Recalled Bravelle Was OOS (All Counts).**

Plaintiffs allege, "[u]pon information and belief," that all of the Recalled Lots were "defective," FAC ¶ 31, which they define as "not meet[ing] the potency standards advertised and warranted by Ferring," *id*. ¶ 67, and "should not have been sold," *id*. ¶ 31. Plaintiffs allege that Ferring's voluntary recall of Bravelle "suggests a strong inference" that Ferring "knew or suspected that all of the . . . lots were sub-potent[.]" *Id.* ¶ 30.[6] An uninvestigated suspicion and "suggested" inference, however, cannot state a plausible claim under Rule 8. *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief *above the speculative level* on the assumption that all of the complaint's allegations are true.") (emphasis added); *Iqbal*, 556 U.S. at 678 (a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement") (internal quotations omitted).

Further, Ferring's recall of all lots of Bravelle does not allow for the plausible inference that "Ferring knew or suspected that all of the . . . lots were subpotent or had the potential to be subpotent." FAC ¶ 30. To the contrary, it reflects the company's desire to "ensure that all of its products adhere to the highest quality standard," as Ferring communicated to Plaintiffs. *Id.*, Ex. 1. The FAC lacks any basis to question the reason for the scope of the recall, thus Plaintiffs' "suggested" inference does not "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also, e.g., O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1116 (D. Minn. 2008) (simple existence of recall without allegations that plaintiffs

---

[6] Plaintiffs admit that their FAC relies almost entirely upon allegations based upon information and belief. *See* FAC, unnumbered paragraph at 1 (Plaintiffs allege "upon personal knowledge as to facts pertaining to themselves, and upon information and belief . . . as to all other matters.").

themselves "encountered any problems with [the product's] functionality" did not sustain complaint); *Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 690 (2007) (refusing to adopt view that "any recall announcement, " such as one taken as a "precautionary measure," created a *prima facie* case under the ICFA).

Plaintiffs' own allegations indicate that not all of the recalled lots of Bravelle were OOS. *See* FAC ¶ 2 ("Ferring voluntarily recalled all Bravelle that it sold through the United States between March 2014 and October 2015 . . . after Ferring's internal quality monitoring revealed that *certain* lots of the drug did not meet potency specifications") (emphasis added); *id.* at Ex. 1 ("*certain* lots of BRAVELLE . . . did not meet potency requirements through the expiration date") (emphasis added). Indeed, Plaintiffs allege that only 7 of 32 lots of Bravelle were tested and found to be OOS. *Id.* ¶ 30.[7]

Finally, Rule 9(b) applies to Plaintiffs' consumer fraud and unjust enrichment claims, and the Seventh Circuit has held that "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli*, 631 F.3d at 442, 446; *see also Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 783 (N.D. Ill. 2015) ("[t]he familiar formula of pleading facts upon information and belief won't do in a fraud case") (internal quotations omitted). To survive dismissal for failure to state a claim based on allegations pled on information and belief, Plaintiffs must plead "(1) that the facts constituting the fraud are not accessible to [them]" and (2) "grounds for [their] suspicions . . . [that] make the allegations *plausible*." *Pirelli*, 631 F.3d at 443 (emphasis in original). Plaintiffs plead neither. Under these circumstances, Rule 9(b) requires dismissal. *See, e.g., Deschepper*,

---

[7] Any reference to Plaintiffs' allegations regarding the number of lots that were tested and found to be OOS should not be construed as an admission of their factual accuracy. Rather, reference is made to show that dismissal is appropriate even assuming that Plaintiffs' allegations are true.

84 F. Supp. 3d at 783-84 (dismissing claims pled "upon information and belief" for failure to adequately plead grounds for suspicions of fraud).

### B. Plaintiffs Do Not Allege That <u>Their</u> Bravelle Was OOS (All Counts).

Plaintiffs' theory is that they paid for a product that was overvalued because it was "potentially ineffective." FAC ¶¶ 7-8, 10, 70, 85, 103, 119. But it was not "overvalued" if it was within specification at the time of use (even if Plaintiffs did not ultimately have successful outcomes). The Dodds, Keiths, and Mrs. Minerich have not plausibly pled that their Bravelle was OOS at any time, much less at the time of use. *See, e.g., O'Neil*, 553 F. Supp. 2d at 1118 (dismissing claims based on benefit-of-the-bargain theory where plaintiffs did not plausibly allege they received a defective product).

Even if Plaintiffs had alleged facts suggesting that they received OOS Bravelle, they still do not allege that their Bravelle was OOS when used, or that they did not receive an appropriate dose of Bravelle given their physicians' dosing decisions (physicians determine the appropriate dosage and adjust the dosage based on its effect on the patient). FAC, Ex. 2 ("Your healthcare provider will tell you how much BRAVELLE® to use and when to use it" and "Your healthcare provider may change your dose of BRAVELLE® if needed"). The FDA Enforcement Report, *supra* 3, indicates that the OOS in certain lots was identified at 12 months post-manufacture; there is no allegation that anyone who took Bravelle earlier in its shelf life received OOS Bravelle. Nor do Plaintiffs allege that their physicians failed to increase their dose to an appropriate level even if Plaintiffs received product that was OOS when used.[8] Because

---

[8] Ms. Cooper alleges that her Bravelle came from one of the lots identified to be OOS at 12 months post-manufacture, but does not allege when she purchased or took her Bravelle. FAC ¶ 9. If she used Bravelle before it was 12 months into its shelf life, there is no basis for concluding that she received OOS Bravelle. Because Ms. Cooper does not allege that her Bravelle was OOS when used or that it did not work for her, her claims are not plausible. *See, e.g., Iqbal*, 556 U.S. at 678 ("[w]here a complaint pleads facts that are

Plaintiffs have not plausibly alleged that they received anything but appropriately potent Bravelle, their FAC fails to state a claim for relief and should be dismissed pursuant to Rule 8. *See Spector*, 2016 WL 1270493, at *3 (dismissing ICFA claim where "Plaintiff has pleaded *no* facts . . . showing that the Products do *not* provide [the represented benefits] as promised").

### C. Plaintiffs Dodds, Minerich, and Keith Allege That Bravelle Worked as Promised (Counts I-V, VII, VIII).

Plaintiffs' claims also are implausible for the simple reason that their allegations are more consistent with a theory that Bravelle actually *worked* for them. Bravelle is indicated to induce ovulation and to "treat women with healthy ovaries so they can make multiple (more than 1) eggs." FAC, Ex. 2 at 1; Prescribing Information, *supra* 2. "Multiple" is expressly described as "more than 1" egg. FAC, Ex. 2 at 1. Thus, if a woman ovulated and/or produced more than one egg, Bravelle has worked as indicated. Plaintiffs allege that Mrs. Minerich, Mrs. Dodds, and Ms. Dorris produced multiple eggs, Compl. ¶ 18, [D.E. 1] (Bravelle "led Ms. Dorris to produce a number of eggs"); FAC ¶¶ 8 (Mrs. Dodds produced three eggs);[9] 10 (Mrs. Minerich produced two eggs). Further, according to the FAC, Ms. Dorris and Mrs. Minerich underwent IVF treatment, *id.* ¶¶ 7, 10; and the allegations imply that Ms. Cooper underwent IUI treatment, *id.* ¶ 9 (Ms. Cooper incurred costs "leading up to Intrauterine Insemination ('IUI')"). These treatments require ovulation and the production of at least one egg in order to even take place, and are more consistent with the theory that Bravelle worked for Plaintiffs than the theory that it did not. *See id.* at Ex. 2.

---

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief") (internal quotations omitted).

[9] Mrs. Dodds alleges that she underwent "two cycles of ovarian stimulation and egg retrieval," implying that she ovulated and had an egg retrieval as a result of both cycles. FAC ¶ 8. Any allegation that her eggs were not usable is immaterial because Bravelle is not indicated to have an impact on egg quality or usability.

Moreover, Plaintiffs allege that the Patient Information Form expressly warrants that the product contains sufficiently potent FSH to help women "develop[ ] and releas[e] eggs" and "make multiple eggs."  FAC ¶ 48.  Plaintiffs allege that Bravelle had just that effect on Mrs. Dodds, Ms. Dorris, and Mrs. Minerich, in that they each produced and released multiple eggs, *id*. ¶¶ 7-8, 10.  Accordingly, Plaintiffs' allegations that Ferring breached any express or implied warranty,[10] was unjustly enriched by its alleged misconduct,[11] or engaged in any deceptive conduct that caused their alleged injuries[12] are therefore not only implausible, they are directly contradicted by the FAC.

---

[10] *See, e.g.*, *Anthony v. Country Life Mfg., LLC,* 70 Fed. App'x 379, 383 (7th Cir. 2003) (no breach of warranty where plaintiff failed to plead that product at issue failed to "conform with an affirmative statement of fact or promise or an express description of the goods") (citing *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 787-88 (2001)); *Baldwin*, 78 F. Supp. 3d at 741 (dismissing implied breach of warranty claim where plaintiff failed to "allege in what way the product was ineffective"); *Massa v. Genentech Inc.*, No. H-11-70, 2012 WL 956192, at *9 (S.D. Tex. Mar. 19, 2012) (breach of express warranty claim requires "that the plaintiff was injured by such failure of the product to comply with the express warranty"); *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) ("[a] product which performs its ordinary function adequately does not breach the implied warranty of merchantability"); *Virchow v. University Homes, Inc.*, 699 N.W.2d 499, 503-04 (S.D. 2005) (breach of express warranty claim requires proof that breach was proximate cause of the buyer's financial injury).

[11] *See, e.g.*, *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (for unjust enrichment under Illinois law, "a plaintiff must allege that defendant has unjustly retained a benefit to the plaintiff's detriment") (internal quotations omitted); *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 247 (Tex. App 2007) ("[t]o recover under an unjust enrichment theory, the benefits to the other party must be actually unjust under the principles of equity"); *Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003) (unjust enrichment requires "proof of unfairness in retaining the benefit"); *see also, e.g., Mathison v. Bumbo,* No. SA CV08-0369, 2008 WL 8797937, at *6 (C.D. Cal. Aug. 18, 2008) (dismissing unjust enrichment claim under California law where product performed as promised: "How it could be unjust for [defendant] to keep profits for a product that, by-and-large, performed as promised?").

[12] *See, e.g., De Bouse v. Bayer*, 235 Ill.2d 544, 554 (2009) ("to maintain an action under the [ICFA], the plaintiff must actually be deceived by a statement"); *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 197 (S.D. 2007) ("to state a claim under SDCL 37-24-31, [plaintiffs] must have pleaded that their economic damages were proximately caused by one or more of the  . . . alleged violations of the [SDCL]"); TEX. BUS. & COM. CODE § 17.50(a) (violation of DTPA must "constitute a producing cause of economic damages or damages for mental anguish").

### D.    Plaintiffs Fail to Plead Plausibly, or with Particularity, any Deceptive Conduct (Counts IV-VII).

Plaintiffs' consumer fraud claims are based on two theories: (1) that Ferring made misrepresentations regarding Bravelle, FAC ¶¶ 74, 88, 107, 122, and (2) that Ferring failed to disclose known or potential potency issues with Bravelle, *id*. ¶¶ 67, 82, 100, 116.  Plaintiffs do not plead either theory with plausibility or particularity as required under Rules 8 and 9(b), thus their ICFA, SDCL, MCPA, and DTPA claims should be dismissed.[13]

First, Plaintiffs do not allege with ***particularity*** any actionable misrepresentations.  The FAC contains only boilerplate allegations that Ferring represented that "the Recalled lots had characteristics and quantities that it does not have," and "that the Bravelle in the Recalled Lots was of a particular standard, quality, or grade when it was not."  FAC ¶¶ 73, 90 (i), 106. Plaintiffs also vaguely allege that "[n]one of Ferring's promotional materials or labels disclosed the fact that Bravelle suffered from potency problems or had the potential to suffer from potency problems," or provided "any warning concerning the potential adverse health effects associated with increased doses of Bravelle necessitated because of potency issues."  *Id*. ¶¶ 69, 84, 102, 118.

Plaintiffs, however, do not identify any specific communication that they saw or read, much less the details required by Rule 9(b), such as who made the communication, or where or when Plaintiffs saw or heard it.  *See, e.g., Baldwin*, 78 F. Supp. 3d at 738 ("to satisfy Rule 9(b), a plaintiff must identify a specific misrepresentation that he saw, the date he saw it, and where he

---

[13] *See, e.g., De Bouse*, 235 Ill. 2d at 550 (ICFA claims require a "deceptive act or practice by the defendant"); *Young*, 671 F. Supp. 2d at 1037 ("[a] SDCL violation requires a misrepresentation or concealment in connection with either the sale or the advertisement of merchandise"); *Robinson v. Match.com L.L.C.,* No. 10-cv-2651, *et al*., 2012 WL 5007777, at *8 (N.D. Tex. Oct. 17, 2012) (to state a claim under the DTPA, a plaintiff must allege that the defendant "engaged in false, misleading, or deceptive acts"); *Lipov v. Louisiana-Pacific Corp.*, No. 12-cv-439, 2013 WL 3805673, at *3-4 (W.D. Mich. July 22, 2013) (to state a claim under the fraud-based subsections of M.C.L. § 445.903(1), plaintiff must plausibly allege "the circumstances constituting fraud").

saw it"). As a result, Rule 9(b) requires dismissal of Plaintiffs' consumer fraud claims. *See, e.g.,*

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 762-63 (N.D. Ill.

2014) (dismissing ICFA claim for failure to plead with particularity); *Lipov*, 2013 WL 3805673,

at *4 (dismissing MCPA claims where plaintiff did not allege he saw any of the alleged

misrepresentations).[14]

Further, to state a claim based on a failure to disclose theory under the DTPA, ICFA, and

SDCL, Plaintiffs must allege knowing and intentional deceit. *See, e.g., Nygaard*, 731 N.W.2d at

197 (SDCL claims require knowing and intentional conduct) (citing SDCL 37-24-6); Tᴇx. Bᴜs.

& Cᴏᴍ. Cᴏᴅᴇ § 17.46(b)(24) (DTPA claim based on a failure to disclose theory requires

knowing and intentional conduct); *Jensen*, 371 Ill. App. 3d at 689 ("[f]or liability to attach due to

an alleged concealment, a plaintiff must establish that the fact concealed was known to the seller

at the time of concealment"). Plaintiffs, however, do not allege that Ferring knew of any potency

issue before they purchased their Bravelle, and their own allegations suggest the *opposite* of any

deceptive conduct: Plaintiffs allege they purchased Bravelle between April 2014 and July 2015,

---

[14] *See also, e.g., Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584, at *1 (N.D. Ill. June 2,
2010) (plaintiff failed to state ICFA claim where he "states that he saw the menu, signage,
advertisements, and commercials but does not describe what was in those communications"); *Ritacca v.
Storz Med., A.G.*, 291 F.R.D. 176, 180 (N.D. Ill. 2013) (dismissing ICFA claim for failure to plead with
particularity because plaintiffs "allege that they made their decision to purchase the [medical device]
based on information they received from [defendant], the corporate websites, and printed sales material"
but failed to allege "which websites the complaint refers to, what information was taken from the website
or websites, or even whether the content of the website or websites was under the control of
[defendant]"); *Darne*, 2015 WL 9259455, at *9 (dismissing ICFA claim where plaintiff "failed to identify
any communication . . . in which [defendant] omitted to disclose the defective [product]"); *Home Owners*,
109 F. 3d at 1008-1009 (plaintiff failed to state a MCPA claim where did not allege "the time, the place, .
. . the person making the misrepresentation," or "the contents of the misrepresentation"); *Berry v.
Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (dismissing DTPA claim where
requirements of Rule 9(b) were not satisfied); *Young*, 671 F. Supp. 2d at 1037 (plaintiffs "failed to plead
any particularized details relating to the sale or advertisement of [defendant's] services, much less
particularized facts alleging that [defendant] made misrepresentations or concealments in connection to
the sale of those services").

FAC ¶¶ 7-8, 10.[15]  There are no allegations that Ferring discovered or suspected any potential potency issues before July 2015.  As one federal court observed:  "The failure to disclose facts by one who has no knowledge of those facts . . . is not a false, misleading, or deceptive act or practice."  *Yumilicious Franchise, LLC v. Barrie*, No. 13-cv-4841, 2015 WL 1822877, at *4 (N.D. Tex. Apr. 22, 2015).

Moreover, the FAC recognizes that Ferring regularly conducted quality monitoring, notified the FDA upon discovery of an issue, conducted a recall, and created a reimbursement program for all consumers.  FAC ¶¶ 28-29.  It would be an odd fraud indeed for Ferring to publicly announce subpotency findings, initiate a recall, and create a voluntary reimbursement program.  *See, e.g.*, *Darne,* 2015 WL 9259455, at *11 (allegations that defendant "publicly issued" information about a defect were "incompatible with allegations that it attempted to conceal these facts").

Because Plaintiffs have not plausibly pled any deceptive conduct, they have failed to state a claim under the ICFA, DTPA, SDCL, and MCPA and these claims should be dismissed.  In addition, because Plaintiffs' unjust enrichment claim is "premised on the same core of allegations as Plaintiffs' consumer fraud claims," it too "necessarily fails."  *Baldwin*, 78 F. Supp. 3d at 742 (internal quotations omitted).[16]

### E.       Plaintiffs Do Not Plausibly Allege Reliance or Causation Related to Any Alleged Misrepresentation by Ferring (Counts I, II, IV-VIII).

Plaintiffs' failure to identify *any* false statements upon which they allegedly relied renders their allegations of reliance and causation implausible, requiring dismissal of their DTPA, SDCL, ICFA, and MCPA claims.  *See, e.g., Robinson*, 2012 WL 5007777, at *8-10

---

[15] Ms. Cooper does not allege when she purchased her Bravelle.  FAC ¶ 9.
[16] *See also Cleary*, 656 F.3d at 518 ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

(DTPA claims based on section 17.46 require reliance); *Cheval Int'l v. Smartpak Equine LLC*, No. 14-5010, 2016 WL 1064496, at \*12 (D.S.D. Mar. 15, 2016) ("to recover in an action under the [SDCL], a plaintiff must have relied on the alleged misrepresentation"); *De Bouse*, 235 Ill. 2d at 554 ("If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and . . . cannot prove proximate cause" as required under the ICFA); *In re OnStar Contract Litig.*, 278 F.R.D. 352, 378 (E.D. Mich. 2011) ("an individual asserting a claim under . . . the MCPA . . . must establish reliance").

Similarly, Plaintiffs fail to allege that they read or saw the alleged express warranties discussed in Paragraph 48, so their cursory allegation that the challenged statements were part of the "basis of the transaction" is implausible. FAC ¶ 49. Accordingly, Plaintiffs' breach of express warranty claims should be dismissed. *Cf.* U.C.C. § 2-313 (express warranty created if "affirmation of fact or promise…becomes part of the basis of the bargain"); *see Ackermann v. Wyeth Pharms.*, 471 F. Supp. 2d 739, 744 (E.D. Tex. 2006) (lack of reliance "foreclosed" breach of express warranty claim as well as "[a]ny claim for a DTPA violation based on breach of an express warranty").

## F. Plaintiffs Do Not Plead Details of Their Purchase With Particularity (Counts III-VII).

Plaintiffs also omit critical details about their alleged purchases of Bravelle. They do not allege *where* Plaintiffs purchased the Bravelle (*i.e.*, whether the Bravelle was purchased from a pharmacy or directly from a physician), what quantity of product was purchased, and with respect to the Keiths, who purchased the Bravelle. These omissions further warrant dismissal of Plaintiffs' consumer fraud claims. *See, e.g., Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05 C 3004, 2006 WL 952032, at \*4 (N.D. Ill. April 12, 2006) (dismissing ICFA claim because plaintiff failed to allege "when and where she purchased the drugs at issue"); *Baldwin*,

15

78 F. Supp. 3d at 738 (dismissing ICFA claim because allegation that plaintiff purchased the product "both online and at a GNC store in Illinois" was insufficient to allege with particularity "when and where Plaintiff even purchased the product").

## II. PLAINTIFFS' BREACH OF WARRANTY CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD PRE-SUIT NOTICE AND PRIVITY (COUNTS II AND III).

### A. Plaintiffs Fail to Plead Privity as Required under Illinois and Michigan Law.[17]

Illinois law requires privity to establish a breach of express or implied warranty claim alleging economic loss. *See, e.g., Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 677 (N.D. Ill. 2005); *Larry J. Soldinger Assoc., Ltd. v. Aston Martin Lagonda of N. Am., Inc.*, No. 97 C 7792, 1999 WL 756174, at *6 (N.D. Ill. Sept. 13, 1999). Michigan law similarly requires privity for breach of express warranty claims. *See, e.g., Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2012 WL 6084167, at *13 (W.D. Mich. Dec. 6, 2012).[18]

Neither the Keiths (Illinois) nor Ms. Cooper (Michigan) adequately plead privity, *i.e.*, they fail to allege that they purchased Bravelle from Ferring. They allege that they paid for Bravelle, but never allege where they purchased Bravelle or how they paid for it. *Cf.* FAC ¶¶ 7, 9. The Keiths face an additional obstacle because they have not alleged whether Ms. Dorris (a non-plaintiff) or Mr. and Mrs. Keith were the direct purchasers of Bravelle. The Keiths allege

---

[17] Plaintiffs do not allege the particular state law that applies to their common law claims. For purposes of this Motion, Ferring applies the law of the state where the alleged injury occurred, as that appears to be the state with the most significant relationship to the litigation. *See Baldwin*, 78 F. Supp. 3d at 742; *Johnson v. Ford Motor Co.*, No. 01 C 8882, 2004 WL 407022, at *2 (N.D. Ill. Jan. 30, 2004) ("Illinois choice of law . . . presumes that the local law of the State where the injury occurred should determine the rights and liabilities of the parties").

[18] In *Pack v. Damon Corp.*, 434 F.3d 810, 820 (6th Cir. 2006), the Sixth Circuit predicted that the Michigan Supreme Court would hold that privity of contract is not required for breach of *implied* warranty claims, despite case law to the contrary. *Id.* at 819-20 (discussing contrary case law). Should that prediction prove incorrect, the lack of privity between Ms. Cooper and Ferring would provide a further basis for dismissal of Plaintiffs' *implied* warranty claim.

16

only that they paid for Bravelle, but it is unclear whether they purchased Bravelle directly (as opposed to reimbursing Ms. Dorris for her purchase of Bravelle). *See, e.g.*, FAC ¶ 7.

Because the FAC fails to plead privity, dismissal is required. *See, e.g., Jensen*, 371 Ill. App. 3d at 691 ("plaintiff would only have a cause of action for breach of implied warranty of merchantability against the entity from which he purchased [the product]" and, therefore, "plaintiff's suit should have been brought against [the] pharmacy"); *Montgomery*, 2012 WL 6084167, at \*13 ("Under Michigan law, no privity of contract exists between a consumer, who buys from a retailer, and the manufacturer who has not sold a product directly to the consumer.").[19]

### B. Plaintiffs Did Not Allege Pre-Suit Notice.

Under all applicable state laws, a plaintiff must give the seller pre-suit notice of the claimed breach of express or implied warranty. 810 ILCS 5/2-607(3)(a); S.D.C.L. § 57A-2-607(3)(a); M.C.L. § 440.2607(3)(a); TEX. BUS. & COM. CODE § 2.607(c)(1). This notice requirement is not a mere formality; it facilitates the Uniform Commercial Code's clear preference "that the breach be cured without a lawsuit." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 495 (1996).[20] Accordingly, failure to comply with the notice requirement is an absolute bar to all warranty claims. 810 ILCS 5/2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach ***or be barred from***

---

[19] *See also, e.g., Caterpillar*, 393 F. Supp. 2d at 677-79 (dismissing breach of express and implied warranty claims because only the purchaser (not the plaintiff) was in privity of contract with the defendant); *Lantz v. Am. Honda Motor Co.*, No. 06 C 5932, 2007 WL 1424614, at \*11 (N.D. Ill. May 14, 2007) (dismissing breach of implied warranty claim for lack of privity because plaintiffs purchased motorcycles from a dealer, not from the defendant).

[20] *See also, e.g., Hepper v. Triple U Enters., Inc.*, 388 N.W.2d 525, 527 (S.D. 1986) ("The purpose of requiring notice within a reasonable time is to give the seller sufficient time to investigate the breach of warranty claim while facts are still fresh. Timely notice also fosters settlement through negotiation, permits a seller to avoid future defects, allows a seller to minimize damages, and protects a seller from stale claims.") (internal citation omitted).

*any remedy*") (emphasis added); S.D.C.L. § 57A-2-607(3)(a) (same); M.C.L. § 440.2607(3)(a) (same); TEX. BUS. & COM. CODE § 2.607(c)(1) (same). *See also Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 461-62 (1989) (failure to provide pre-suit notice "is fatal to the cause of action"); *Whitwell v. Wal-Mart Stores, Inc.*, No. CIV 09-513-GPM, 2009 WL 4894575, at *6 (S.D. Ill. Dec. 11, 2009) (dismissing complaint with prejudice for lack of pre-suit notice). None of the Plaintiffs alleged pre-suit notice to Ferring, and therefore, their breach of implied and express warranty claims should be dismissed with prejudice.

## III. PLAINTIFFS' MMWA CLAIM SHOULD BE DISMISSED FOR FAILURE TO ALLEGE AN ACTIONABLE WARRANTY (COUNT VIII).

The MMWA provides a federal private cause of action for a warrantor's failure to comply with the terms of a "written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d). The term "written warranty" has a specific meaning under the MMWA and does *not* include all express warranties. 15 U.S.C. § 2301(6) (defining "written warranty"; warranties must refer to a "specified period of time"); *Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 314-22 (7th Cir. 1981) (discussing at length the statutory interpretation of "written warranty"). Plaintiffs cursorily allege that Ferring "issued written warranties" and "express warranties regarding Bravelle's potency." FAC ¶¶ 131-32. But Plaintiffs never state what these warranties were or how they allegedly fit within the definition of written warranties under the MMWA. As such, Plaintiffs have not alleged a written warranty that could support their MMWA claim.

Even if Plaintiffs had articulated a warranty, their MMWA claim fails for at least three additional reasons. *First,* the MMWA is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d). Bravelle's labeling and packaging is governed by the Federal Food, Drug, & Cosmetic Act. *See, e .g.*, *Wyeth v. Levine*, 555 U.S. 555, 568 (2009) ("The FDA's premarket approval of a new drug

18

application includes the approval of the exact text in the proposed label.").  Therefore, any claims relating to alleged written warranties contained in Bravelle's labeling and packaging fail as a matter of law.  *See Bates v. Gen. Nutrition Ctrs., Inc.*, 897 F. Supp. 2d 1000, 1002 (C.D. Cal. 2012) ("[T]he Magnuson–Moss Warranty Act claim should be dismissed because the Food, Drug, and Cosmetic Act governs written warranties on the labeling of dietary supplements."); *Kanter v. Warner-Lambert Co.*, 122 Cal. Rptr. 2d 72, 86 (Cal. App. Ct. 2002) (MMWA inapplicable to over-the-counter lice treatment because "the FDCA and its implementing regulations govern the labeling at issue here"); *Jasper v. MusclePharm Corp.*, No. 14-CV-02881-CMA-MJW, 2015 WL 2375945, at *5 (D. Colo. May 15, 2015) (collecting cases construing MMWA, noting "[e]ach one of them arises in the context of the FDCA – and each one holds that the Magnuson–Moss Warranty Act does not apply to the labels of products governed by the FDCA").

*Second,* the MMWA only applies to consumer products, 15 U.S.C. §§ 2301-2312.  A consumer product is defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes."  15 U.S.C. § 2301(1). Prescription drugs are only available through a health care provider, and therefore, "are not customarily available to the ordinary person" and "are not sold to unsuspecting consumers."  *See Kemp v. Pfizer, Inc.*, 835 F. Supp. 1015, 1025 (E.D. Mich. 1993) ("The court concludes, as a matter of law, that the [heart] valve is not the type of product normally used for consumer purposes by the general public."); *Goldsmith v. Mentor Corp.*, 913 F. Supp. 56, 63 (D.N.H. 1995) (similar; prosthesis device); *Kanter*, 122 Cal. Rptr. 2d at 86 ("[A] drug regulated by the FDCA is [ ] not a consumer product within the meaning of Magnuson-Moss.").

19

*Finally,* to the extent Plaintiffs attempt to predicate their MMWA claim on state law breach of warranty claims (*e.g.*, by referencing "the express representations and warranties described herein"), their MMWA claim fails for the same reasons their state law claims fail. FAC ¶ 131. Specifically, the MMWA claim fails for failure to plausibly allege a breach of warranty, *see* Sections I.A-C; failure to allege privity, *see* Section II.A; and failure to allege pre-suit notice, *see* Section II.B. *See, e.g., Rosipko v. FCA US, LLC*, No. 15-11030, 2015 WL 8007649, at *5 (E.D. Mich. Dec. 7, 2015) (collecting cases); *Howton v. Winnebago, Inc.*, No. 04 C 8349, 2005 WL 1500926, at *2 (N.D. Ill. June 13, 2005) (dismissing MMWA claim for breach of implied warranty because plaintiff failed to satisfy requirements of Illinois law).

## IV. PLAINTIFFS' MCPA AND ICFA CLAIMS FAIL AS A MATTER OF LAW (COUNT IV, VI).

The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state of the United States." M.C.L. § 445.904(1)(a). The Michigan Supreme Court has held that, in determining whether this exemption applies, "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is specifically authorized. Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Globe Life. Ins. Co*., 597 N.W.2d 28, 38 (Mich. 1999).

Because the FDA regulates the general transaction and conduct at issue – the sale and marketing of a pharmaceutical drug – and the FDA specifically approved the sale of Bravelle, FAC ¶ 19, the MCPA does not apply to the alleged conduct and Plaintiff's MCPA claim should be dismissed. *See, e.g., Short v. Janssen Pharms. Inc.*, No. 1:14-cv-1025, 2015 WL 2201713, at *5 (W.D. Mich. May 11, 2015) (dismissing MCPA claim based on alleged promotion of off-label use of FDA-approved drug); *Duronio v. Merck & Co.*, No. 267003, 2006 WL 1628516, at

*6-7 (Mich. App. Ct. June 13, 2006) (unpublished) (affirming dismissal of MCPA claim based on alleged concealment of potential risks of drug "[b]ecause the general marketing and advertising activities underlying plaintiff's MCPA claim are authorized and regulated . . . by the FDA"). *See also, e.g., Peter v. Stryker Orthopaedics, Inc.*, 581 F. Supp. 2d 813, 816 (E.D. Mich. 2008) (MCPA did not apply to seller of medical device where the general transaction (the sale of a medical device) was regulated by FDA, and where the defendant was specifically authorized to sell the device, despite Plaintiffs' allegations that the device was defective).[21]

Similarly, to the extent that Plaintiffs' ICFA claim is based on the Bravelle "labels," FAC ¶ 69, it fails under the safe harbor provision of the ICFA:  The ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body  . . . acting under statutory authority of this State or the United States."  815 ILCS 505/10b(1).  The Illinois Supreme Court has held that omissions or statements that have been "specifically authorized by [an agency] in the course of carrying out the duties assigned to it by Congress, [the] action cannot stand, even if the [statements or omissions] might be found deceptive by a trier of fact." *Price v. Philip Morris*, 219 Ill. 2d 182, 235 (2005).  The Bravelle labels were specifically approved by FDA.[22]  Accordingly, their ICFA claim fails.  *See, e.g., Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 942-43 (7th Cir. 2001) (claims based on statements on drug label barred by Section 10(b)(1)); *Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 7217197,

---

[21] *See also, e.g., Kyles v. Keefe Commissary Network, LLC*, 14-cv-11907, 2015 WL 1637466, at *8 (E.D. Mich. Apr. 13, 2015) (prison commissary was exempt from MCPA claim based on improperly manufactured hot cocoa product because its "general conduct of producing and packaging food is explicitly authorized by federal food regulations"); *Alexander v. Del Monte Corp.*, No. 09-12303, 2011 WL 87286, at *3 (E.D. Mich. Jan. 11, 2011) (grocery store was exempt from MCPA claim arising from the sale of canned fruit because it was authorized to sell foods in a retail grocery store under Michigan law, as was the packager of the fruit who was authorized by FDA to package food products).

[22] *See* Bravelle Drug Approval Package, *available at* http://www.accessdata.fda.gov/drugsatfda_docs/nda/2002/21-289_Bravelle.cfm (last visited Apr 21, 2016).

at *6 (N.D. Ill. Mar. 29, 2013) (ICFA did not apply to claim based on omission from label specifically approved by FDA).[23]

## V.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT III).

Finally, unjust enrichment is not a cognizable claim where a contractual agreement is alleged to exist and control the dispute in question.  *See, e.g.*, *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("In Illinois[,] recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant.").[24] Here, Plaintiffs unequivocally allege the existence of an express agreement between Ferring and themselves, and incorporate this allegation into their claim for unjust enrichment.  *See, e.g.*, FAC ¶¶ 1 ("Defendant Ferring . . . *warrants*, advertises, and sells"); 5 ("Before manufacturing, *warranting*, advertising and/or selling"); 6 ("Plaintiffs seek relief to remedy Ferring's breach of express *warranty*"); 44(b)(i) ("Whether the Bravelle contained in the Recalled Lots met the potency specifications *warranted* and claimed by Ferring"); 44(b)(vii) ("Whether Defendant breached the terms of its express *warranty*"); 60 ("Plaintiffs and the class incorporate by reference paragraphs 1-44 as though fully set forth herein.") (all emphases added).

Because Plaintiffs assert a breach of express warranty, they have alleged the existence of a contract that governs their conduct.  *See In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) ("it is well settled that express warranty claims . . . sound in contract")

---

[23] 815 ILCS 505/10b(1) was held unconstitutional by *Best v. Mach. Works*, 179 Ill.2d 367 (1997), but the Supreme Court of Illinois and the Seventh Circuit continue to recognize this safe harbor provision.  *Price*, 219 Ill. 2d at 182; *Bober*, 246 F.3d at 934.

[24] *See also, e.g.*, *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000) ("when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory" and "[u]njust enrichment claims are based on quasi-contract"); *Johnson v. Larson*, 779 N.W.2d 412, 416 (S.D. 2010) ("unjust enrichment is unwarranted when the rights of the parties are controlled by an express contract"); *A.D. Transport, Inc. v. Mich. Materials & Aggregates Co.*, No. 290236, 2010 WL 3819958, at *13 (Mich. Ct. App. Sept. 30, 2010) (unjust enrichment is unavailable where conduct is governed by express agreement).

(citations omitted).[25]  Plaintiffs did not plead the unjust enrichment claim in the alternative;
instead, Plaintiffs "acknowledge[d] throughout that there is an express contract[,]" which bars
recovery for unjust enrichment.  *Cohen*, 735 F.3d at 615 ("While a plaintiff may plead breach of
contract in one count and unjust enrichment . . . in others, it may not include allegations of an
express contract which governs the relationship of the parties, in the counts for unjust
enrichment").

Additionally, "[u]njust enrichment is not an independent cause of action" under Texas,
Illinois, and South Dakota law.[26]  *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560-
61 (N.D. Tex. 2009); *Chicago Title Ins. Co. v. Teachers' Retirement Sys. of IL*, 7 N.E.3d 19, 24
(Ill. 1st Dist. 2014) ("Unjust enrichment is not an independent cause of action.").  Rather, unjust
enrichment is a restitutionary *remedy* used in the absence of an express agreement.  *Hancock*,
635 F. Supp. 2d at 560-61; *Chicago Title Ins. Co.*, 7 N.E.3d at 24 ("this theory is inapplicable
when an express contract, oral or written, governs the parties' relationship"); *Johnson*, 779
N.W.2d at 416 (unjust enrichment is an "equitable remedy of restitution imposed because the
transfer lacks an adequate legal basis").  Plaintiffs' unjust enrichment claims alleged under
Texas, Illinois, and South Dakota law fail for this additional reason.

---

[25] *See also, e.g.*, *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008) ("an express
warranty [is] . . . a part of the basis of a bargain and is contractual in nature"); *Heritage Res., Inc. v.
Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 341–42 (Mich. Ct. App. 2009) ("our Supreme Court has
long implicitly recognized that an express warranty is no different than any other term of the contract");
*Knudson v. Grand Council of Nw Legion of Honor*, 63 N.W. 911, 913 (S.D. 1895) ("statements made are
to be regarded as warranties, and constitute a part of the contract").

[26] Ferring acknowledges that this issue is not completely settled under Illinois or South Dakota law, but
follows the more recent case law on this issue.  *See Cleary*, 656 F.3d at 516; *Johnson*, 779 N.W.2d at 416.

**CONCLUSION**

Plaintiffs have not stated a valid claim under Rules 8 and 9(b) because they do not plausibly allege, let alone with particularity, that all recalled lots of Bravelle were subpotent, that the specific Bravelle they purchased was subpotent at the time of use, or that the Bravelle they purchased did not work as promised. They further fail to allege that Ferring engaged in any deceptive conduct, or that any of the foregoing caused their purported damages. Nor do Plaintiffs satisfy the other pleading requirements for their eight causes of action. Therefore, their FAC should be dismissed pursuant to Rule 12(b)(6). By way of summary:

- **Count I (Breach of Express Warranty)** should be dismissed:

  - For failure to plausibly allege a breach of warranty, *see* Section I.A-C;

  - For failure to plausibly allege that challenged statements became the "basis of the bargain," *see* Section I.E;

  - For failure to allege privity (for claims asserted under Illinois and Michigan law), *see* Section II.A; and

  - For failure to allege pre-suit notice, *see* Section II.B.

- **Count II (Breach of Implied Warranty)** should be dismissed:

  - For failure to plausibly allege a breach of warranty, *see* Section I.A-C;

  - For failure to allege privity (for claim asserted under Illinois law), *see* Section II.A; and

  - For failure to allege pre-suit notice, *see* Section II.B.

- **Count III (Unjust Enrichment)** should be dismissed:

  - For failure to plausibly and with particularity allege unjust conduct and causation, *see* Section I.A-F;

  - Because a contractual agreement is alleged to control the dispute in question, *see* Section V;

  - Because unjust enrichment is not an independent cause of action under Texas, Illinois, and South Dakota law, *see* Section V.

24

- **Count IV (Violation of ICFA)** should be dismissed:

  o For failure to plausibly and with particularity allege deceptive conduct and details of purchase, *see* Section I.A-D, F;

  o For failure to plausibly and with particularity allege causation, *see* Section I.E; and

  o Because the ICFA does not apply to actions based on statements specifically authorized by the FDA, *see* Section IV.

- **Count V (Violation of DTPA)** should be dismissed:

  o For failure to plausibly and with particularity allege deceptive conduct and details of purchase, *see* Section I.A-D, F; and

  o For failure to allege plausibly and with particularity reliance, *see* Section I.E.

- **Count VI (Violation of MCPA)** should be dismissed:

  o For failure to plausibly and with particularity allege deceptive conduct and details of purchase, *see* Section I.A-D, F;

  o For failure to plausibly and with particularity allege reliance, *see* Section I.E; and

  o Because the MCPA does not apply to the sale and marketing of Bravelle, which is generally and specifically authorized by FDA, *see* Section IV.

- **Count VII (Violation of SDCL)** should be dismissed:

  o For failure to plausibly and with particularity allege deceptive conduct and details of purchase, *see* Section I.A-D, F; and

  o For failure to plausibly and with particularity allege causation, *see* Section I.E.

- **Count VIII (Violation of MMWA)** should be dismissed:

  o For failure to plausibly allege a breach of warranty, *see* Section I.A-C;

  o For failure to allege an actionable written warranty, because the MMWA does not apply to claims relating to the labeling and packaging of prescription pharmaceuticals, *see* Section III;

  o For failure to satisfy the requirements of state warranty law, *see* Section III.

25

Dated:  April 22, 2016                    By:   _/s/ Elizabeth M. Chiarello_____
                                                Maja C. Eaton
                                                meaton@sidley.com
                                                Kara L. McCall
                                                kmccall@sidley.com
                                                Elizabeth M. Chiarello
                                                echiarello@sidley.com
                                                SIDLEY AUSTIN LLP
                                                One South Dearborn Street
                                                Chicago, Illinois  60603
                                                Telephone: (312) 853-7000
                                                Facsimile:  (312) 853-7036

                                                *Attorneys for Ferring Pharmaceuticals Inc.*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and is available for viewing and downloading from the CM/ECF system. The forgoing document was served upon all counsel of record via the CM/ECF system on this 22nd day of April, 2016.

*/s/ Elizabeth M. Chiarello*

27