**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NICOLE KEITH, RYAN KEITH, JACK R. DODDS, JR., CRYSTALINA R. DODDS, MICHELLE COOPER, and SHANNON MINERICH, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) Case No. 15 C 10381 |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FERRING PHARMACEUTICALS, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On March 9, 2016, Plaintiffs Nicole Keith, Ryan Keith, Jack R. Dodds, Jr., Crystalina R. Dodds, Michelle Cooper, and Shannon Minerich ("Plaintiffs"), on behalf of themselves and all others similarly situated, brought the present eight-count First Amended Class Action Complaint against Ferring Pharmaceuticals, Inc. ("Defendant") alleging claims for breach of express warranty (Count I), breach of the implied warranty of merchantability (Count II), and unjust enrichment (Count III), along with violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV), the Texas Deceptive Trade Practices Consumer Protection Act (Count V), the Michigan Consumer Protection Act (Count VI), the South Dakota Deceptive Trade Practices and Consumer Protection Act (Count VII), and the Magnuson-Moss Warranty Act (Count VIII).

Before the Court are Defendant's (1) motion to dismiss brought pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and (2) motion to strike the class allegations under Rule 23.

For the following reasons, the Court grants in part – with and without prejudice – and denies in part Defendant's motion to dismiss. Further, the Court grants Plaintiffs' voluntarily dismissal of the Michigan Consumer Protection Act claim and Plaintiffs' Illinois breach of implied warranty claim without prejudice. The Court grants Plaintiffs leave to file a Second Amended Class Action Complaint, as discussed in detail below. *See Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana,* 786 F.3d 510, 519 (7th Cir. 2015) ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Plaintiffs' Second Amended Class Action Complaint is due on or before October 14, 2016. The Court denies Defendant's motion to strike Plaintiffs' amended class allegations.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). The relevant question at the motion to dismiss stage is not whether the plaintiff will ultimately prevail on the merits, but whether the complaint is sufficient to cross the federal pleading threshold. *See Skinner v. Switzer,* 562 U.S. 521, 529-30, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct.

1955, 167 L. Ed. 2d 929 (2007).  Put differently, a "complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,*

550 U.S. at 570).  In determining the sufficiency of a complaint under the plausibility standard,

courts must "accept all well-pleaded facts as true and draw reasonable inferences in the

plaintiffs' favor."  *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).  It is well-

settled that "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative

defenses."  *Hyson USA, Inc. v. Hyson 2U, Ltd.,* 821 F.3d 935, 939 (7th Cir. 2016).

## II.     Federal Rule of Civil Procedure 9(b)

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that

required under Rule 8(a)(2).  *See Camasta,* 761 F.3d at 736; *Pirelli Armstrong Tire Corp.*

*Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011).  Specifically,

"plaintiffs must plead the 'who, what, when, where, and how: the first paragraph of any

newspaper story' of the alleged fraud."  *Rocha v. Rudd,* 826 F.3d 905, 911 (7th Cir. 2016)

(citation omitted).  In other words, the "requirement of pleading fraud with particularity includes

pleading facts that make the allegation of fraud plausible," therefore, the "complaint must state

'the identity of the person making the misrepresentation, the time, place, and content of the

misrepresentation, and the method by which the misrepresentation was communicated to the

plaintiff.'"  *Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014)

(citations omitted); *see also Rocha*, 826 F.3d at 911.  Allegations based on information and

belief will not suffice under Rule 9(b) unless "(1) the facts constituting the fraud are not

accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'"

*Grenadyor*, 772 F.3d at 1108 (citations omitted); *see also Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016).

## BACKGROUND

In their First Amended Complaint, Plaintiffs allege that Defendant manufactures, warrants, advertises, and sells Bravelle©, which is the brand name version of the generic drug urofollitropin, designed to treat infertility in women. (R. 24, First Am. Compl. ¶¶ 1, 24.) In particular, Bravelle stimulates egg maturation and multiple follicular development in women who are able to produce and release eggs. (*Id.* ¶¶ 1, 20.) Bravelle is commonly used in the course of assisted reproductive technology, such as in vitro fertilization ("IVF"). (*Id.* ¶¶ 1, 20.) On October 13, 2015, Defendant voluntarily recalled all Bravelle that it sold in the United States between March 2014 and October 2015 (the "Recalled Lots") after Defendant's internal quality monitoring revealed that certain lots of Bravelle did not meet potency specifications. (*Id.* ¶¶ 2, 28.) Specifically, Defendant's stability testing showed a decreased potency in an ingredient in Bravelle, namely, the follicle stimulating hormone ("FSH"). (*Id.* ¶¶ 4, 22, 23.) Plaintiffs assert that this decreased potency resulted in a decreased therapeutic effect and created the potential for unnecessary over-exposure of patients. (*Id.* ¶ 4.)

Further, Plaintiffs allege that Defendant recalled unsold batches of Bravelle directly from pharmacies and sought to recall the Bravelle already sold to consumers by sending letters directly to the consumers. (*Id.* ¶ 29.) According to Plaintiffs, individual patients who purchased Bravelle are able to contact Defendant and obtain a reimbursement solely for the price of the Bravelle that they purchased once Defendant determines that the Bravelle purchased was from one of the Recalled Lots. (*Id.*) More specifically, Plaintiffs assert that under the reimbursement

plan, Defendant is offering reimbursement for the consumers' out-of-pocket expenditures to purchase Bravelle, but not for any of the other costs related to the fertility treatments. (*Id.*)

Plaintiffs maintain that before manufacturing, warranting, advertising, and/or selling the Recalled Lots of Bravelle, Defendant failed to take appropriate steps to ensure that the Recalled Lots were effective for their intended use and would provide the reproductive health benefits Defendant claimed. (*Id.* ¶ 5.) Furthermore, Plaintiffs allege that Defendant knew or should have known that the Recalled Lots were not suitable for use and were sub-potent due to the decreased FSH potency. (*Id.*) Plaintiffs and the putative classes seek relief for damages that the Recalled Lots' failure to meet potency specifications cause, including the out-of-pocket expenditures to purchase Bravelle, the payments they made to medical providers for fertility treatments utilizing Bravelle, and any associated costs. (*Id.* ¶ 6.)

Also, Plaintiffs allege that all of the Bravelle they purchased was part of the Recalled Lots and that they were damaged as a direct and proximate result of their Bravelle purchases contained in the Recalled Lots. (*Id.* ¶ 11.) Plaintiffs contend that they would not have purchased Bravelle had they known prior to their purchases that the Bravelle they bought suffered from sub-potency issues, or even that it had the potential to suffer from sub-potency issues, nor would they have paid the costs associated with the related medical treatment of which Bravelle was an integral part. (*Id.* ¶¶ 12, 26, 61.)

Plaintiffs bring this action on behalf of themselves and all persons in the United States who purchased Bravelle contained in the Recalled Lots. (*Id.* ¶¶ 5, 35.) In addition, or in the alternative, Plaintiffs bring this lawsuit on behalf of a multi-state class, which consists of individuals or entities in Illinois, California, Florida, Massachusetts, Michigan, Minnesota,

Missouri, New Jersey, New York, and Washington, who purchased Bravelle contained in the Recalled Lots. (*Id.* ¶ 26.) Also, in addition or in the alternative, Plaintiffs allege claims on behalf of an Illinois class, a Michigan class, a Texas class, and a South Dakota class. (*Id.* ¶¶ 37, 38, 39, 40.)

Allegations regarding the named Plaintiffs include that Nicole Keith and Ryan Keith are married and reside in Lansing, Illinois, and that in July 2015, Nicole Keith's sister-in-law, Christina Dorris, began an IVF cycle that included injections of Bravelle. (*Id.* ¶ 7.) Embryos retrieved from Ms. Dorris at the end of the cycle were then implanted into Mrs. Keith. (*Id.*) During the course of this fertility treatment, Mr. and Mrs. Keith paid approximately $20,000 to $25,000 in out-of-pocket costs related to the IVF process. (*Id.*) Ultimately, the IVF treatment was not successful and Mrs. Keith did not become pregnant. (*Id.*) Due to the significant costs involved in the treatment, Mr. and Mrs. Keith cannot afford to begin another cycle of IVF treatment. (*Id.*)

Named Plaintiffs Jack R. Dodds, Jr. and Crystalina R. Dodds are married and reside in Magnolia, Texas. (*Id.* ¶ 8.) The Dodds made two purchases of Bravelle during the recall period – the first in April 2014 and the second in July 2014. (*Id.*) Mrs. Dodds used the Bravelle for a total of two cycles of ovarian stimulation and egg retrieval. (*Id.*) The Dodds spent over $3,000 on their purchases of Bravelle and in excess of $35,000 in related out-of-pocket costs, including anesthesiologist fees, medical facility procedure fees, and pre-implantation fees. (*Id.*) After two treatment cycles with Bravelle, only three unusable eggs were retrieved from Mrs. Dodds' ovaries. (*Id.*) In sum, the fertility treatments were not successful and Mrs. Dodds did not become pregnant. (*Id.*) Because of the significant costs involved in the treatment, the Dodds

cannot continue with IVF treatments at this time.  (*Id.*)

Another named Plaintiff, Michelle Cooper, resides in Gross Pointe, Michigan.  (*Id.* ¶ 9.) Ms. Cooper paid approximately $3,000 for Bravelle to use as part of her treatment leading up to Intrauterine Insemination ("IUI").  (*Id.*)  Plaintiffs allege that Ms. Cooper incurred an additional $1,000 in related expenses.  (*Id.*)  The Bravelle purchased by Ms. Cooper came from lot number K 11813A-2, a lot that Defendant's own internal testing confirmed as sub-potent.  (*Id.*)  Ms. Cooper did not become pregnant.  (*Id.*)

Named Plaintiff Shannon Minerich resides in Marmarth, North Dakota.  (*Id.* ¶ 10.)  Ms. Minerich purchased one cycle of Bravelle in November 2014 in connection with undergoing an IVF cycle and paid approximately $870 out-of-pocket for the Bravelle and approximately $10,000 in related costs.  (*Id.*)  Plaintiffs allege that Ms. Minerich only retrieved two usable eggs.  (*Id.*)  Ms. Minerich's fertility treatment was unsuccessful and she did not become pregnant.  (*Id.*)  At the time Ms. Minerich purchased the Bravelle contained in the Recalled Lots and underwent her IVF cycle in November 2014, she was a resident of South Dakota.  (*Id.*)

## ANALYSIS

I.     **General Arguments**

In its motion to dismiss, Defendant first sets forth general arguments concerning the sufficiency and plausibility of Plaintiffs' allegations as they relate to all or part of the claims in this lawsuit.  These arguments include:  (1) Plaintiffs do not plausibly allege that all recalled Bravelle was out of specification ("OOS")[1] (all counts); (2) Plaintiffs do not sufficiently allege

---

[1]  According to Defendant, certain Recalled Lots did not meet potency specifications throughout their entire shelf life, and thus were "out of specification."  (R. 40, Def.'s Brief, at 9.)

that the Bravelle that they bought and used was OOS (all counts); (3) Plaintiffs Dodds, Minerich, and Keith allege that Bravelle worked as promised (Counts I-V, VII, VIII); (4) Plaintiffs fail to plausibly allege, or allege with particularity, Defendant's misrepresentations or deceptive conduct (Counts IV-VII); (5) Plaintiffs fail to plausibly allege reliance or causation related to Defendant's alleged misrepresentations (Count I, II, IV-VIII); and (6) Plaintiffs do not plead the details of their Bravelle purchases with particularity (Counts IV-VII).  The Court will address Defendant's arguments that Plaintiffs failed to plausibly allege, or allege with particularity, Defendant's deceptive conduct or misrepresentations, reliance, and causation as it relates to each individual claim below.  The Court first turns to Defendant's general arguments set forth above under (1), (2), and (3).

### A.     All Recalled Bravelle

Defendant first argues that Plaintiffs have failed to plausibly allege that all recalled Bravelle was sub-potent or OOS.  Specifically, Defendant takes issue with Plaintiffs' allegations based on "information and belief" that all of the Recalled Lots were defective, as well as Plaintiffs' reliance on the inference that – based on Defendant's voluntary recall of the 32 lots of Bravelle – Defendant knew or suspected that these lots were sub-potent or had the potential to be sub-potent due to the decreased FSH potency.  (First Am. Compl. ¶¶ 2, 30, 31.)  In addition to the allegations Defendant highlights, Plaintiffs also allege that the Bravelle they purchased was included in the Recalled Lots and further assert that Defendant knew but failed to disclosed that the Recalled Lots were defective because the lots did not meet the potency standards as Defendant had advertised and warranted.  (*Id*. ¶¶ 32, 67, 82, 91, 100, 116.)

Turning to Defendant's first argument, allegations "cannot be faulted for their reliance on

'information and belief.'" *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). The phrase

"information and belief" is "used by plaintiffs who have a good-faith belief in the allegations

they make, but nevertheless make those allegations based on secondhand information."

*Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013); *see also Boykin v.*

*KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayor, J) ("allegations may be based on

information and belief when facts are peculiarly within the opposing party's knowledge.")

(citation omitted). Courts, however, "frown on making allegations 'on information and belief' in

the fraud context and generally find that such claims do not meet Rule 9(b)'s particularity

requirement." *Cincinnati Life*, 722 F.3d at 948. The Court will discuss Defendant's Rule 9(b)

arguments in the context of the Plaintiffs' deceptive business practices claims below. *See*

*Camasta*, 761 F.3d at 738 ("a plaintiff alleging fraud 'does not have unlimited leeway' in

satisfying the particularity requirement of Rule 9(b) when the circumstances are pleaded solely

on 'information and belief.'").

 Viewing Plaintiffs' well-pleaded allegations as true and all reasonable inferences in their

favor – as the Court is required to do at the procedural posture despite Defendant's suggestion

otherwise – Plaintiffs have plausibly alleged that all of the Recalled Lots were sub-potent or had

the potential to be sub-potent – especially because Plaintiffs do not have personal knowledge

about how the decreased FSH potency varied among the Recalled Lots. *See* 5 Charles Alan

Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1224 (3d ed. 2004) ("Pleading on

information and belief is a desirable and essential expedient when matters that are necessary to

complete the statement of a claim are not within the knowledge of the plaintiff."). In short,

Plaintiffs' allegations that the recalled Bravelle was OOS or sub-potent based on information and

belief are sufficient under the federal pleading standards because the potency information is not within the Plaintiffs' personal knowledge.

## B.  Individual Plaintiffs' Bravelle

Similarly, Defendant argues that the named Plaintiffs failed to plausibly allege that the exact Bravelle they used was sub-potent because they did "not allege that their Bravelle was OOS when used, or that they did not receive an appropriate does of Bravelle given their physicians' dosing decisions."  (R. 40, Def.'s Brief, at 9.)  Again, accepting Plaintiffs' well-pleaded facts as true and drawing all reasonable inferences in Plaintiffs' favor, they have alleged that their fertility treatments failed, that Defendant announced certain lots of Bravelle were sub-potent, and that Defendant recalled Bravelle sold in the United States from March 2014 until October 2015.  (First Am. Compl. ¶¶ 2, 7-10, 28-31.)  Based on the timing of Plaintiffs' fertility treatments, Defendant's discovery that certain batches of Bravelle were sub-potent in tandem with the resultant Bravelle recall, and that Plaintiffs' infertility treatments failed, Plaintiffs have plausibly alleged that the Bravelle they used at the time of their treatment was sub-potent, despite their failure to identify the exact Recalled Lot number, as Plaintiff Cooper did.  *See Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Such specificity is not necessary at this stage.

## C.  Bravelle Worked as Promised

Next, Defendant asserts that Plaintiffs Dodds, Minerich, and Keith actually allege that Bravelle worked as promised suggesting that these Plaintiffs have somehow pleaded themselves out of court.  *See O'Gorman v. City of Chicago,* 777 F.3d 885, 889 (7th Cir. 2015) ("A

complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law."). Here, Defendant does not point to specific allegations in the First Amended Complaint, but rather relies on the Bravelle Patient Information form in making arguments about the merits and veracity of Plaintiffs' allegations. The relevant question at the motion to dismiss stage, however, is not whether Plaintiffs will ultimately prevail on the merits, but whether the allegations are sufficient to cross the federal pleading threshold. *See Skinner,* 562 U.S. at 529-30. Because Defendant seeks to dissect the merits of Plaintiffs' claims, its argument is unavailing at this time. *See Hahn v. Walsh,* 762 F.3d 617, 632 (7th Cir. 2014) (plausibility is required "'to assure that a pleading suffices to give effective notice to the opposing party,' not in order to evaluate the veracity of the pleaded facts or the ultimate merits of the plaintiff's claim.") (citation omitted). The Court now focuses on Plaintiffs' specific claims.

## II.     Breach of Express and Implied Warranties – Counts I and II

In Counts I and II, Plaintiffs allege breach of express warranty claims and breach of the implied warranty of merchantability claims. In its motion, Defendant argues that Plaintiffs have failed to plausibly allege their breach of express warranty claims under the federal pleading standards, that Plaintiffs did not sufficiently allege pre-suit notice for their express and implied warranty claims, and that the Illinois and Michigan Plaintiffs failed to plead privity. The Court addresses each argument separately.

### A.     Express Warranty Allegations

Plaintiffs allege that Defendant's Recalled Lots contained an express warranty with every purchase because each package of Bravelle comes with a Patient Information form. (First Am.

Compl. ¶ 48.)  On the Patient Information form, Defendant represents that Bravelle, including the Recalled Lots, contains FSH in a sufficient amount and with sufficient potency to treat women who need help developing and releasing eggs, as well as those women with healthy ovaries to make multiple eggs as part of an assisted reproductive technology (including IVF) cycle.  (*Id.*)  In addition, Plaintiffs allege that the prescribing information for Bravelle warrants that the medication "contain[s] 82.5 International Units of FSH, to deliver 75 International Units FSH after reconstituting."  (*Id.*)  Plaintiffs explain that because the primary benefits of Bravelle include the development of multiple follicles and stimulation of ovulation and the production of multiple ova via the administration of FSH, it is critical that patients being treated with Bravelle receive appropriate and adequate doses of FSH to achieve the intended and specified effects, therefore, it is critical that patients being treated with Bravelle receive Bravelle that meets the potency specifications.  (*Id.* ¶ 26.)  Also, Plaintiffs allege that they relied on Defendant's alleged misrepresentations concerning the Recalled Lots in relation to their breach of warranty claims. (*Id.* ¶ 89.)

Turning to relevant state law,[2] in Texas, an express warranty is created when "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  *Berge Helen Ltd. v. GE Oil & Gas, Inc.,* 896 F.Supp.2d 582, 603-04 (S.D. Tex. 2012) (citations omitted); *see also Head v. U.S. Inspect DFW, Inc.,* 159 S.W.3d 731, 746 (Tex. App. 2005).  Similarly, in South Dakota, "[a]ny description of the goods

_____

[2]  The Court focuses on Illinois, Michigan, Texas, and South Dakota law based on the named Plaintiffs' allegations and to address Defendant's specific arguments, although Plaintiffs also bring their breach of warranty claims on behalf of the nationwide and multi-state classes.

which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Nationwide Mut. Ins. Co. v. Barton Solvents Inc.,* 855 N.W.2d 145, 152 (S.D. 2014) (citation omitted).  Under Illinois law, "to prevail on a claim for breach of express warranty, a plaintiff must plead and prove that the seller made an affirmation of fact that was part of the basis of the bargain between the parties."  *Rosenstern v. Allergan, Inc.,* 987 F. Supp. 2d 795, 805 (N.D. Ill. 2013).  Likewise, in Michigan, an "express warranty is created by a seller by setting forth a promise or affirmation, description, or sample with the intent that the goods will conform."  *Scott v. Illinois Tool Works, Inc.,* 217 Mich. App. 35, 42 (Mich. Ct. App. 1996).

In the present motion, Defendant argues that Plaintiffs have not sufficiently alleged reliance in relation to their express warranty claims because they "fail to allege that they read or saw the alleged express warranties."  (Def.'s Brief, at 15.)  On the other hand, Plaintiffs contend that when a warranty is part of every purchase, such as here, a plaintiff is not required to show individual reliance.  *See In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.,* 155 F. Supp. 3d 772, 809-10 (N.D. Ill. 2016); *see also In re Hydroxycut Mktg. & Sales Practices Litig.,* 299 F.R.D. 648, 660 (S.D. Cal. 2014) ("at minimum, the buyer must have heard, seen, or received the representations in order for them to form the basis of the bargain"); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F.Supp.2d 1311 (S.D. Fla. 2013) (general allegations of reliance on advertisements and product labels plausibly allege reliance when "reliance is an essential element of a breach of warranty claim").  The Court agrees.  Because Plaintiffs allege that each package of Bravelle comes with a Patient Information form and that this form includes Defendant's representations of Bravelle's effectiveness, they

13

have plausibly alleged reliance under the circumstances.  *See In re Rust-Oleum*, 155 F. Supp. 3d at 810.

Defendant also argues that Plaintiffs did not sufficiently allege causation under the federal pleading standards.  Despite Defendant's argument to the contrary, Plaintiffs have plausibly alleged causation and injury by stating that they took Bravelle for one or more cycles, Defendant made representations about the potency of the Bravelle, the women consumed the Bravelle that was sub-potent, and as a result, they did not become pregnant and cannot continue with fertility treatments due to the significant costs involved.  (First Am. Compl. ¶¶ 7, 8, 10, 26, 48, 49, 89.)

**B.    Notice**

In addition, Defendant argues that Plaintiffs did not allege pre-suit notice as related to both their breach of express and implied warranty claims.  "State law varies on what constitutes reasonable notice and to whom notice should be given" for breach of warranty claims.  *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 727 (5th Cir. 2007).  Nonetheless, the "UCC provides that a buyer of goods 'must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'"  *In re Rust-Oleum,* 155 F. Supp. 3d at 799 (quoting UCC § 2-607(3)(a)); *Brookings Mun. Util., Inc. v. Amoco Chem. Co.,* 103 F. Supp. 2d 1169, 1175 (D.S.D. 2000) (applying South Dakota law).  Some states, however, allow for constructive notice or no notice at all, depending on the circumstances of the case.  *See Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 674-75 (Tex. 2004) (collecting cases).  Under Illinois law, for example, "[d]irect notice is not required when (1) the seller has actual knowledge of the defect of the particular product;" or "(2) the seller is deemed to have been

reasonably notified by the filing of the buyer's complaint alleging breach of UCC warranty." *Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482, 492 (Ill. 1996). In the context of goods sold for human ingestion, some courts have held that timely noticed is not required. *See In re Hydroxycut Mktg. & Sales Practices Litig.,* 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011) (citing *Fischer v. Mead Johnson Labs.,* 341 N.Y.S.2d 257, 259 (N.Y.App.Div. 1973) (per curiam) (timely notice not required in case involving oral contraceptives)). Moreover, under comment 4 of the UCC § 2-607(3)(a), the notice rule is required "to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *Ashley v. Goodyear Tire & Rubber Co.,* 635 F.2d 571, 574 (6th Cir. 1980) (quoting Michigan's UCC statute).

Under the circumstances of this case, Plaintiffs have plausibly alleged that Defendant had notice of its alleged breach due to Defendant's actual knowledge that certain Recalled Lots were sub-potent. *See In re Rust-Oleum,* 155 F. Supp. 3d at 800 ("direct notice includes when the seller had actual knowledge of the defect of the particular product"). Specifically, Plaintiffs allege that Defendant's internal quality monitoring revealed that certain Bravelle lots did not meet potency specifications. (First Am. Compl. ¶¶ 2-5, 28.) Plaintiffs also allege that Defendant recalled unsold batches of Bravelle due to these sub-potency issues. (*Id*. ¶¶ 29, 32, 28.) As such, Plaintiffs' allegations are sufficient at this early stage to establish the UCC notice requirement. The Court therefore denies Defendant's motion to dismiss in this respect.

## C. Privity

Defendant further contends that Illinois and Michigan law require plaintiffs to have privity with the seller to establish a breach of an express warranty for economic loss and that Illinois also requires privity for breach of implied warranty claims. *See Caterpillar, Inc. v.*

*Usinor Industeel*, 393 F. Supp. 2d 659, 677 (N.D. Ill. 2005) ("To enforce an express warranty under Illinois law, [] a party without a warranty assignment alleging purely economic loss must be in privity of contract."); *Rothe v. Maloney Cadillac, Inc.,* 119 Ill. 2d 288, 292 (Ill. 1988) ("with respect to purely economic loss, the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller"); *Montgomery v. Kraft Foods Glob., Inc.,* 822 F.3d 304, 309 (6th Cir. 2016) (although Michigan requires privity for breach of express warranty claims, "Michigan has abandoned the privity requirement for implied-warranty claims.") (citation omitted).  Here, Defendant argues that the Keiths (Illinois) and Ms. Cooper (Michigan) have failed to sufficiently plead privity because they did not state that they directly purchased Bravelle from Defendant.  Moreover, Defendant posits that it is unclear if the Keiths or their sister-in-law Ms. Dorris directly purchased the Bravelle.

In response, Plaintiffs argue that "a statement which 'relates to the goods and becomes part of the basis of the bargain' *may,* under Illinois law, give rise to an express warranty *regardless* of whether the parties are in privity."  *Ampat/Midwest, Inc. v. Illinois Tool Works, Inc.*, No. 85 C 10029, 1988 WL 53222, at *3 (N.D. Ill. May 12, 1988) (emphasis in original) (citation omitted); *but see Rosenstern*, 987 F. Supp. 2d at 805 ("a party must have privity of contract in order to bring a cause of action for breach of express warranty").  Despite Plaintiffs' reliance on *Ampat/Midwest,* the Supreme Court of Illinois has yet to extend express warranties to non-privity plaintiffs, but instead highlights the "comprehensive scheme of remedies" under Illinois' UCC.  *See Collins Co. v. Carboline Co.,* 125 Ill. 2d 498, 516 (Ill. 1988); *see also Frank v. Edward Hines Lumber Co.,* 327 Ill. App. 3d 113, 124 (Ill.App. Ct. 2001) (detailing exceptions to privity requirement under Illinois UCC).  In addition to the UCC exceptions, another

exception to privity under Illinois law is when a remote manufacturer knows "the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Canadian Pacific Ry. Co. v. Williams–Hayward Protective Coatings,* Inc., No. 02 C 8800, 2005 WL 782698, at *12–13 (N.D. Ill. Apr. 6, 2005) (quoting *Crest Container Corp. v. R.H. Bishop Co.,* 111 Ill. App. 3d 1068, 1076 (Ill. App. Ct. 1982)). In *Crest Container*, for example, the customer sent exact specifications to the manufacturer before the manufacturer produced a custom-made heating system. *See Crest Container,* 111 Ill.App.3d at 1076.

Examining the Illinois Plaintiffs' allegations and all reasonable inferences in their favor, they have not sufficiently alleged privity with Defendant nor have they alleged an exception to privity under Illinois law. Therefore, the Court grants this aspect of Defendant's motion to dismiss without prejudice, and grants the Illinois Plaintiffs leave to re-allege their express warranty claim. The Court also grants the Illinois Plaintiffs' voluntary dismissal of their breach of implied warranty claim, without prejudice.

Similarly, under Michigan law, "privity of contract *is* necessary for a remote purchaser to enforce a manufacturer's express warranty." *Montgomery*, 822 F.3d at 308 (emphasis in original) (quoting *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.,* 284 Mich.App. 617, 774 N.W.2d 332, 343 n.12 (2009)). Viewing the Michigan Plaintiffs' allegations and all reasonable inferences in their favor, they have failed to allege privity with Defendant as required under Michigan law. The Court therefore grants this aspect of Defendant's motion to dismiss without prejudice and also grants the Michigan Plaintiffs leave to amend these allegations keeping in mind counsel's Rule 11 obligations.

### III.     Violations of the Magnuson-Moss Warranty Act – Count VIII

In Count VIII, Plaintiffs allege a Magnuson-Moss Warranty Act ("MMWA") claim based on Defendant's express written warranties. "The MMWA is a remedial statute designed to protect consumers against deceptive warranty practices." *Anderson v. Gulf Stream Coach, Inc.,* 662 F.3d 775, 780 (7th Cir. 2011); *see also In re Rust-Oleum,* 155 F. Supp. 3d at 796. The MMWA "provides a federal private cause of action for a warrantor's failure to comply with the terms of a 'written warranty, implied warranty or service contract.'" *Anderson,* 662 F.3d at 780 (quoting *Voelker v. Porsche Cars N. Am., Inc.,* 353 F.3d 516, 522 (7th Cir. 2003); 15 U.S.C. § 2310(d)(1).

In its motion, Defendant asserts that Plaintiffs have failed to properly allege their MMWA claim because: (1) Plaintiffs' MMWA claim cannot be predicated on Plaintiffs' state law breach of warranty claims; (2) the MMWA does not apply to the written warranty "contained in Bravelle's labeling and packaging" because it is governed by the Federal Food, Drug, & Cosmetic Act ("FDCA"); and (3) the MMWA does not apply because Bravelle is not a "consumer product" as defined by the MMWA. The Court discusses each argument below.

#### A.     State Law Breach of Warranty Claims

As to Defendant's first argument, it is well-settled that the MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir. 2004); *see, e.g., Pearson & Son Excavating, Co. v. W. Recreational Vehicles, Inc.,* No. 03 CV 40246, 2007 WL 836603, at *2 (E.D. Mich. Mar. 14, 2007); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("claims under the Magnuson–Moss Act stand or fall with his express and

implied warranty claims under state law").  As discussed in detail above, Plaintiffs have

plausibly alleged their breach of express warranty claims based on the Patient Information form

attached to all packages of Bravelle and its labeling under South Dakota and Texas law, and the

Court is granting Plaintiffs leave to re-allege their Illinois and Michigan express warranty

claims.  Hence, this first argument is without merit.

### B. Federal Food, Drug, & Cosmetic Act

Next, Defendant contends that Plaintiffs' MMWA claim fails as a matter of law because

Bravelle's labeling and packaging – which form the basis of Plaintiffs' express warranty claims

– is governed by the Food, Drug, & Cosmetic Act.  *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 568

(2009) ("The FDA's premarket approval of a new drug application includes the approval of the

exact text in the proposed label.") (citing 21 U.S.C. § 355 & 21 CFR § 314.105(b)); *see also* 15

U.S.C. §  2311(d) (MMWA "inapplicable to any written warranty the making or content of

which is otherwise governed by Federal law").  Defendant, however, fails to cite legal authority

that the Food, Drug, and Cosmetic Act exclusively governs breach of written warranty claims

based on the labeling of prescription drugs.  The Court thus denies this part of Defendant's

motion to dismiss.

### C. Consumer Products

Defendant further argues that the MMWA only applies to consumer products and that

prescription drugs do not fit under this category.  Under the MMWA, a consumer product is

defined as "any tangible personal property which is distributed in commerce and which is

normally used for personal, family, or household purposes."  15 U.S.C. § 2301(1).  "Where it is

unclear whether a particular product is covered under the definition of consumer product, any

19

ambiguity will be resolved in favor of coverage."  16 C.F.R. § 700.1(a); *see also Kwiatkowski v. Volvo Trucks N. Am., Inc.,* 500 F. Supp. 2d 875, 876 (N.D. Ill. 2007) ("The implementing regulations explain that this definition encompasses all products commonly used for consumer purposes, regardless of their actual use by the individual purchaser.").

Despite this broad definition, Defendant relies on cases holding that medical devices – not prescription drugs – are not consumer products under the MMWA because "the Consumer Product Safety Act ("CSPA") explicitly states that 'devices' regulated under the Federal Food, Drug, and Cosmetic Act, of which the MDA [Medial Device Amendments] is part, are *not* 'consumer products.'"  *Goldsmith v. Mentor Corp.,* 913 F. Supp. 56, 63 (D.N.H. 1995) (quoting 15 U.S.C. § 2052(a)(1)(H)) (emphasis in original); *see also Kemp v. Pfizer, Inc.,* 835 F. Supp. 1015, 1025 (E.D. Mich. 1993); *Kanter v. Warner-Lambert Co.,* 99 Cal. App. 4th 780, 798 (Cal. App. 2002).  Because Bravelle is not a medical device, but instead a prescription drug, these cases are not persuasive.  The Court therefore denies Defendant's motion to dismiss Plaintiffs' MMWA claim.

## IV.  Violations of Consumer Protection Acts – Counts IV, V, VI, and VII

Plaintiffs also allege violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA") and the South Dakota Trade Practices and Consumer Protection Act ("DTPCPA). Plaintiffs have voluntarily dismissed their claims under the Michigan Consumer Protection Act ("MCPA").  Here, Defendant makes several general arguments regarding these claims in light of Rule 9(b)'s heightened pleading standard, including that:  (1) Plaintiffs failed to sufficiently allege Defendant's misconduct; (2) Plaintiffs failed to sufficiently allege Defendant's knowledge

or intent; (3) Plaintiffs did not plausibly allege reliance and causation; and (4) Plaintiffs failed to plead their Bravelle purchase with sufficient particularity. Last, Defendant contends that Plaintiffs' ICFA claim fails as a matter of law.

### A.  Defendant's Misconduct

As discussed, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). As the Seventh Circuit directs, under Rule 9(b), "plaintiffs must plead the 'who, what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud." *Rocha,* 826 F.3d at 911 (citation omitted). In its motion, Defendant argues that Plaintiffs have failed to allege any actionable misrepresentations or misconduct with particularity. Plaintiffs disagree pointing to their allegations that Defendant's potency-related representations appear on Bravelle's packaging and on the Patient Information form provided with every purchase of Bravelle. Further, Plaintiffs allege that this packaging and information contained misrepresentations that the FSH was sufficiently potent, including that the prescribing information for Bravelle warrants that the medication "contain[s] 82.5 International Units of FSH, to deliver 75 International Units FSH after reconstituting."

Under the circumstances, Plaintiffs have alleged that the misrepresentations at issue were on and communicated via Bravelle's packaging and Patient Information form, that the content of the misrepresentation was that the FSH was sufficiently potent, and that upon purchasing the Bravelle, Defendant communicated this misrepresentation to Plaintiffs through Bravelle's packaging. Under Seventh Circuit law, these allegations suffice under Rule 9(b). *See Grenadyor,* 772 F.3d at 1106.

## B.      Knowing or Intentional Conduct

Defendant also argues that Plaintiffs failed to allege knowing or intentional conduct in the context of Plaintiffs' claims that Defendant made misrepresentations regarding Bravelle and that Defendant failed to disclose Bravelle's known or potential potency issues.  It is well-settled under Rule 9(b) that plaintiffs may generally allege malice, intent, and knowledge – meaning that plaintiffs may allege conditions of state of mind – under the strictures of Rule 8.  *See Iqbal*, 566 U.S. at 686-87 (citing *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1301 (3d ed. 2004) ("a rigid rule requiring the detailed pleading of a condition of mind would be undesirable").  Under this standard, Plaintiffs have plausibly alleged that Defendant had knowledge concerning its misrepresentations of Bravelle's potency.  *See Iqbal,* 566 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  In particular, Plaintiffs allege that in October 2015 Defendant's quality monitoring revealed reduced FSH potency in the Recalled Lots, Defendant warranted that the Recalled Lots of Bravelle contained sufficient amounts of FSH, and that Plaintiffs' ingested Bravelle during the recall period.  Although Plaintiffs do not specifically allege that Defendant knew about the sub-potency issues at the time Plaintiffs purchased their Bravelle, this is a fact that is "peculiarly within the opposing party's knowledge." *Boykin,* 521 F.3d at 215.  Defendant, for example, admits that certain Bravelle stability testing took place in the summer and fall of 2015 showing that batches of Bravelle did not meet potency specifications.  (R. 48, Resp. Brief, at 1.)  Whether Defendant conducted stability testing prior to the summer of 2015 and whether the testing results revealed sub-potency issues are facts that Plaintiffs can uncover during

discovery.

Also, viewing Plaintiffs' allegations and reasonable inferences in their favor, they have alleged that Defendant knew, but failed to disclose, the material fact that the Recalled Lots were defective and did not meet the potency standards as warranted. Specifically, Plaintiffs state that although the recall was announced in October 2015, the Bravelle subject to the recall had been sold for as long as 18 months prior to the recall. When viewed in Plaintiffs' favor and in light of Plaintiffs' other allegations, these allegations raise a reasonable inference that Defendant knew about the sub-potency issues well before October 2015. At this juncture, Plaintiffs' allegations regarding knowledge and intent sufficiently cross the federal pleading threshold. *See Iqbal,* 566 U.S. at 686-87; *Skinner,* 562 U.S. at 529-30.

### C. Reliance and Causation

Next, Defendant asserts that "Plaintiffs' failure to identify any false statements upon which they allegedly relied renders their allegations of reliance and causation implausible."[3] (Def.'s Brief, at 14.) As discussed, Plaintiffs have sufficiently alleged Defendant's misrepresentations about Bravelle's potency as indicated on the Bravelle packaging and Patient Information form. Also, Plaintiffs explain the importance on Defendant's representations regarding Bravelle's potency, namely, that because the primary benefits of Bravelle include the development of multiple follicles and stimulation of ovulation and the production of multiple ova via the administration of FSH, it is critical that patients being treated with Bravelle receive appropriate and adequate doses of FSH to achieve the intended and specified effects. Plaintiffs

---

[3] Under the ICFA, "[a] showing of actual reliance is not required." *Cocroft v. HSBC Bank USA, N.A.,* 796 F.3d 680, 687 (7th Cir. 2015); *see also Connick,* 174 Ill. 2d at 501 ("Plaintiffs' reliance is not an element of statutory consumer fraud.").

relied on the potency statements by undergoing costly fertility procedures of which Bravelle was an integral part. Last, Plaintiffs have alleged that Defendant's misrepresentation caused their injury, including the costs associated with the infertility treatments, along with the fact that they did not become pregnant. Despite Defendant's arguments to the contrary, these allegations sufficiently state reliance and causation.

### D. Bravelle Purchase

Furthermore, Defendant contends that Plaintiffs have failed to allege sufficient details about their respective Bravelle purchases under Rule 9(b). Defendant specifically argues that Plaintiffs omit critical details about their Bravelle purchases – such as when and from whom they purchased the Bravelle. Plaintiffs, however, allege that they bought their Bravelle from either their pharmacist or healthcare professionals before their fertility treatments in 2014 and 2015. (First. Am. Compl. ¶ 44(c).) As to the amount purchased, Ms. Minerich, Ms. Cooper, and the Keiths allege that they made one Bravelle purchase for one round of infertility treatment. (*Id.* ¶¶ 7, 9-10.) The Dodds made two purchases of Bravelle during the recall period for a total of two cycles of ovarian stimulation and egg retrieval. (*Id.* ¶ 8.) Furthermore, although Plaintiffs do not allege the exact date they purchased the Bravelle, they have set forth the exact dates of their Bravelle fertility treatments. (*Id.* ¶¶ 7-10.) Therefore, Defendant's argument is without merit.

### E. ICFA Claim

Next, Defendant argues that Plaintiffs' ICFA claim fails as a matter of law. To establish an ICFA claim, a plaintiff must show "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's

injury." *Cocroft*, 796 F.3d at 687.   In the present motion, Defendant asserts that because the

FDA approved of the sale and labeling of Bravelle, Plaintiffs' ICFA claim based on the

Bravelle's label and the Patient Information form falls under the safe harbor provision of the

ICFA, 815 ILCS 505/10b(1).   To clarify, Section 505/10b(1) "states that nothing in the

Consumer Fraud Act shall apply to '[a]ctions or transactions specifically authorized by laws

administered by any regulatory body or officer acting under statutory authority of this State or

the United States.'" *Price v. Philip Morris, Inc.,* 43 N.E.3d 53, 56 (Ill. 2015).   This safe harbor

provision, however, is an affirmative defense, *see id.*, and Plaintiffs are not required to

"anticipate and attempt to plead around affirmative defenses." *Hyson USA*, 821 F.3d at 939; *see

also Fields v. Alcon Labs., Inc.,* No. 13 CV 0197, 2014 WL 1041191, at *2 (S.D. Ill. Mar. 18,

2014) ("Statutory exemption is an affirmative defense not normally appropriate for a Rule

12(b)(6) motion"); *cf. Illinois v. McGraw-Hill Co., Inc.,* No. 13 C 1725, 2013 WL 1874279, at

*5 (N.D. Ill. May 2, 2013) (defendant's compliance with the ICFA's ... statutory exemptions is

an affirmative defense to liability, not something that a plaintiff must prove.").   The Court

therefore denies this aspect of Defendant's motion to dismiss.

## V.      Unjust Enrichment – Count III

In Count III, Plaintiffs allege unjust enrichment claims under Illinois, Texas, Michigan,

and South Dakota law.   In its motion to dismiss, Defendant argues that because Plaintiffs have

alleged that contractual agreements exist and control this dispute, they are barred from bringing

their unjust enrichment claims.   Federal procedural law controls this action under the *Erie*

doctrine and Federal Rule of Civil Procedure 8(d) allows litigants to plead in the alternative. *See

Peterson v. McGladrey & Pullen, LLP,* 676 F.3d 594, 597 (7th Cir. 2012) ("A party may state as

many separate claims or defenses as it has, regardless of consistency.") (quoting Fed.R.Civ.P. 8(d)(3)); *see also Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805 (1999) (the federal "[r]ules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties" to plead inconsistent claims in the alternative).  Therefore, this argument is without merit.

Defendant next asserts that unjust enrichment is not an independent cause of action in Texas, Illinois, and South Dakota, but instead is an equitable remedy.  *See Hancock v. Chicago Title Ins. Co.,* 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) ("Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action, but is instead a theory upon which an action for restitution may rest."); *Chicago Title Ins. Co. v. Teachers' Ret. Sys. of State of Ill.,* 7 N.E.3d 19, 24 (Ill. App. Ct. 2014) ("Unjust enrichment is not an independent cause of action, [r]ather it is a remedy."); *Johnson v. Larson*, 779 N.W.2d 412, 416 (S.D. 2010) (unjust enrichment is an "equitable remedy of restitution").  Defendant, however, concedes that whether unjust enrichment is an independent cause of action is not completely settled in Illinois and South Dakota.  *See Cleary v. Philip Morris Inc.,* 656 F.3d 511, 516 (7th Cir. 2011) (collecting cases illustrating unsettled law).  With this concession, the Court denies Defendant's motion to dismiss the Illinois and South Dakota unjust enrichment claims, but grants with prejudice Defendant's motion as to the unjust enrichment claim based on Texas law. Defendant, however, is on notice that the Texas Plaintiffs may seek unjust enrichment as an equitable remedy.

Defendant also argues that Plaintiffs have failed to plausibly allege unjust conduct and causation to support their unjust enrichment claims.  "Unjust enrichment under Illinois law

requires a plaintiff to show that a defendant has 'unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, ___ F.3d ___, 2016 WL 4097439, at *12 (7th Cir. Aug. 2, 2016) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (1989)). Under Michigan law, to "proceed on a claim of unjust enrichment or quantum meruit, a plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Star of the W. Milling Co. v. Sales,* No. 15 CV 13086, 2016 WL 3753530, at *10 (E.D. Mich. July 14, 2016) (citation omitted). Pursuant to South Dakota law, "[u]njust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.'" *N. Valley Commc'ns, LLC v. Qwest Commc'ns Corp.,* 659 F. Supp. 2d 1062, 1070 (D.S.D. 2009) (citations omitted).

Construing Plaintiffs' allegations as true and all reasonable inferences in their favor, Plaintiffs have alleged the factual details of their unjust enrichment claims with sufficient particularity, especially when viewing these allegations within the context of their deceptive business practices claims discussed above. Specifically, Plaintiffs allege that they and the putative class members conferred a tangible economic benefit upon Defendant by purchasing the Recalled Lots and that they would not have purchased the Recalled Lots and incurred the costs associated with the related medical treatment had they known that the Bravelle was sub-potent. (First Am. Compl. ¶¶ 12, 26, 61.) They further assert that failing to require Defendant to provide renumeration under the circumstances would result in Defendant being unjustly enriched at

Plaintiffs' expense because the Bravelle was sub-potent. Defendant knew it was sub-potent or had the potential to be sub-potent, and that Defendant's retention of the economic benefit would be unjust and inequitable. (*Id*. ¶¶ 2, 30, 62, 63.) Moreover, Plaintiffs have sufficiently alleged causation and injury by stating that they took Bravelle for one or more cycles, Defendant made representations about the potency of the Bravelle, the women consumed the Bravelle that was sub-potent due to deficiencies in the FSH levels, and as a result, they were financially damaged. (*Id*. ¶¶ 7, 8, 10, 48, 51.) As such, Plaintiffs have sufficiently alleged their unjust enrichment claims under Illinois, South Dakota, and Michigan law.

## VI.    Motion to Strike

Defendant also moves to strike Plaintiffs' amended class allegations arguing that because these allegations are facially and inherently deficient, the Court may determine that this matter cannot proceed as a class action at this early stage of the proceedings. *See* Fed.R.Civ.P. 23(d)(1)(D). Courts in this district have determined that when class action pleadings "are facially defective and definitively establish that a class action cannot be maintained," they "can properly grant a motion to strike class allegations at the pleading stage." *Wolfkiel v. Intersections Ins. Servs. Inc.,* 303 F.R.D. 287, 292 (N.D. Ill. 2014) (citation omitted). Although Rule 23(c)(1)(A) states that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action," courts recognize that "most often it will not be 'practicable' for the court to do that at the pleading stage." *Buonomo v. Optimum Outcomes, Inc.,* 301 F.R.D. 292, 295 (N.D. Ill. 2014) (citation omitted). Specifically, if "the dispute concerning class certification is factual in nature and 'discovery is needed to determine whether a class should be certified,' a motion to strike the

class allegations at the pleading stage is premature." *Id*. (citation omitted); *see also Kasalo v. Harris & Harris, Ltd.,* 656 F.3d 557, 563 (7th Cir. 2011) (court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination").

In support of its motion to strike, Defendant relies on its voluntary recall and reimbursement program in which it offers reimbursement for the cost of Bravelle, but not for any of the other costs related to the fertility treatments, which as Plaintiffs allege, are significantly higher. Indeed, Plaintiffs allege that the costs of the fertility treatments are prohibitively expensive and, that due to these costs, they cannot seek any further treatments at this time. Defendant nonetheless argues that Plaintiffs do not adequately represent the putative classes because: (1) Plaintiffs' proposed class action unnecessary adds transaction costs at the expense of the class; and (2) Plaintiffs' proposed class action is "riskier" than the reimbursement program. The Court need not address Defendant's third argument – that the named Plaintiffs are not typical class representatives because they have failed to plausibly allege that they used OOS Bravelle – because the Court has already rejected this argument above.

**A.     Transaction Costs**

Defendant argues that Plaintiffs seek relief that duplicates the Bravelle reimbursement plan, and therefore, the putative classes will incur unnecessary and high transaction costs of notice and attorney's fees at their own expense. Under this scenario, and relying on *In re Aqua Dots Prod. Liab. Litig.,* 654 F.3d 748, 752 (7th Cir. 2011), Defendant thus asserts that the named Plaintiffs will not adequately protect the class members' interests. *See* Fed.R.Civ.P. 23(a)(4). In *Aqua Dots*, the named plaintiffs sought refunds on behalf of purchasers of a toy that the

distributor had voluntarily recalled. *Id.* at 749-50. As part of the recall, the distributor offered replacements or refunds. *Id.* Here, in contrast, Plaintiffs allege that the Bravelle reimbursement program only refunds the costs of the Bravelle itself and not the attendant costs involved in the fertility treatments and other medical costs. As such, *Aqua Dots* is readily distinguishable. Under the circumstances, refunding Bravelle's cost or replacing the Bravelle does not provide the entire remedy the named Plaintiffs seek – especially because of the significantly higher costs associated with the fertility treatments of which Bravelle is an integral part.

**B.    Class Action Riskier**

In further support of its motion to strike, Defendant contends that Plaintiffs and the putative classes will face several proof requirements that they do not face under the reimbursement program. More specifically, Defendant asserts that class members will have to prove that their Bravelle was OOS, whereas, under the reimbursement program, purchasers need not make this showing. Again, Defendant ignores Plaintiffs' allegations that they are seeking more than Bravelle's cost, namely, they also seek the significantly more expensive costs associated with their fertility treatments and attendant medical procedures. Therefore, Defendant's argument that the Court should strike the class allegations because it is providing "full compensation" to the class members under the reimbursement plan is unavailing.

In addition, Defendant's argument that a class action is riskier than the reimbursement plan because class members will have to prove that they suffered injury or damages is not persuasive under the circumstances. Indeed, "the need for individual damages determinations does not, in and of itself, require denial of [a] motion for certification." *Arreola v. Godinez,* 546 F.3d 788, 801 (7th Cir. 2008) ("Although the extent of each class member's personal damages

might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts.").

The remainder of Defendant's arguments based on the risky nature of a class action merely repeat the same arguments Defendant made in support of its motion to dismiss – many of which are factual in nature – making a motion to strike the class allegations inappropriate at this procedural posture. *See Boatwright v. Walgreen Co.,* No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, [] a decision denying class status by striking class allegations at the pleading stage is inappropriate."). The Court therefore denies Defendant's motion to strike the class allegations.

On a final note, the Court reminds the parties that arguments made for the first time in a reply brief and partial or cursory arguments made in footnotes are waived. *See Thulin v. Shopko Stores Operating Co., LLC,* 771 F.3d 994, 997 (7th Cir. 2014); *United States v. Vitrano,* 747 F.3d 922, 925 (7th Cir. 2014).

## CONCLUSION

For these reasons, the Court grants in part without prejudice and denies in part Defendant's Rule 12(b)(6) motion to dismiss. The Court grants Plaintiffs leave to file a Second Amended Class Action Complaint. The Court denies Defendant's motion to strike.

**Dated:** September 27, 2016

ENTERED

_____

**AMY J. ST. EVE**
**United States District Court Judge**

31